HENDERSON v. DEARING.

Opinion delivered March 22, 1909.

1. STATUTES—MODE OF AMENDING.—In amending an amended act it is proper to re-enact and publish at length the amended part as amended. (Page 602.)

2. SAME—EFFECT OF AMENDMENT.—The result of an amendment to an act is to change the original act as to make it read in the same manner it would have read and to give it the same effect it would have had if it had been originally enacted as amended. (Page 602.)

3. FENCES—LEGISLATIVE CONTROL OVER DISTRICT.—The Legislature may by special act create a fencing district or change the boundaries of a district already formed. (Page 603.)

4. SAME—APPORTIONMENT OF EXPENSES.—An act increasing the boundaries of a fencing district already created is not void for failure to provide for the assessment of the expenses of such increase if the mode of apportioning the assessment is already provided by the original act creating the district. (Page 603.)

5. SAME—PRESUMPTION OF BENEFIT.—Where the Legislature increases the boundaries of a fencing district, it will be presumed that all the owners of property in the district as changed will be benefited. (Page 603.)

6. SAME—FAILURE TO PROVIDE FOR SURVEY.—A special act increasing the territory included in a fencing district will not be presumed to be void because it makes no provision for a survey of the lines of the new territory so included. (Page 603.)

Appeal from Independent Circuit Court; *Frederick D. Fulkerson,* Judge; reversed.

*S. A. Moore* and *McCaleb & Reeder,* for appellants.

1. The only issue is whether the act of April 13, 1907, enlarges or changes the boundaries of the district created by act of March 11, 1891. One section of an act can be amended so as to leave the remainder of the act in force without repeating and re-enacting every other section. Lewis' Sutherland, Stat. Const. § 231; 69 Ark. 376; 65 *Id.* 529; 71 *Id.* 556; 35 *Id.* 56, 60; 94 S. W. 610.

2. Though the act of 1907 failed to refer in express terms to the act of 1891, or to any other act, in so far as the provisions of the latter act were in conflict with or repugnant to the. terms of the former, the former is amended to that extent. 52 Ark. 329; 47 *Id.* 481 ; 60 *Id.* 349; 59 *Id.* 54; 64 *Id.* 469; 58 *Id.* 407; 64 *Id.* 95; 49 *Id.* 131 ; 77 *Id.* 383.

3. The act should be construed and enforced with all other laws on the same subject. 35 Ark. 56, 61; 76 *Id.* 309; 55 *Id.* 389; 58 *Id.* 151; 73 *Id.* 600. See, also, 77 Ark. 383; 85 *Id.* 228.

*Ernest Neill* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The act of 1907 imposes no duties on assessors. It amends the act of 1893, not that of 1891.

2. Without the consent of the landowners, a majority in value, no levy can be made. Local assessments are based on benefits alone. In this case no conceivable benefit inures to the owners of lands within the original fence. 1 Page & Jones on Taxation by Assessment, § 118; 71 Ark. 27; 133 N. C. 526.

BATTLE, J. Section one of an act entitled "An act to authorize the enclosing of certain lands on White River in Independence County and for other purposes," approved March 11, 1891, authorized the owner of lands within certain boundaries to enclose the same with one continuous fence.

Sections 2, 3, 7 and 9 of the same act are as follows:

"Section 2. That it shall be the duty of the respective owners of said lands to erect or cause to be erected so much of said fence as would be in proportion to the value of the lands owned by each person within said inclosure, said value to be determined from the assessment of said lands by the county assessor.

"Section 3. That for the purpose of ascertaining what amount of fencing each of such landowners will be required to do, and for the purpose of keeping up said fence, they shall elect on the first Saturday in January of each alternate year three of their number a board of assessors, who shall first take an oath to faithfully perform their duties without prejudice or favor and apportion to said landowners the amount of fencing that would fall to his or her share as provided in section two of this act; provided, that for the year 1891 J. J. Waldrip, F. M. Martin and Albert Arnold shall constitute said board of assessors and hold their offices until the first Saturday in January, 1892, or until their successors are elected and qualified." ·

"Section 7. That, should any owner of land within said territory fail or refuse to do the amount of fencing provided

for in section three (3) of this act, then any other person interested in said inclosure may proceed to do said fencing, and when done have the same valued by appraisers, and if said person who failed or refused to do said fencing shall refuse or fail on demand to pay for said fencing, then said person or persons who shall have done said fencing shall recover against recusant before any court of competent jurisdiction judgment for the amount of the award of the appraisers, together with 50 per centum penalty for refusing to pay said award, and all costs of suit, and said judgment shall become and operate as a lien on the lands lying within said inclosure so fenced, and may be enforced as mechanics' liens are now enforced by law."

"Section 9. The entire fence provided for in this act, when completed, shall be examined and approved by the board of assessors, and if any part thereof is not a lawful or a sufficient fence said board shall have power to condemn the same and to require the person whose duty it was to construct the same originally to reconstruct that part of said fence properly and to make the same a sufficient and lawful fence."

Section one of an act entitled "An act to amend an act entitled 'An act to authorize the inclosing of certain lands on White River, in Independence County, and for other purposes,' approved March 11, 1891," approved March 13, 1893, amends section one of the act of March 11, 1891, changing the boundaries of the fencing district by adding other lands, and authorizing the owners of the lands within the boundaries to inclose the same with one continuous fence.

Section one of an act entitled "An act to amend an act to authorize the enclosing of certain lands on White River, in Independence County, and for other purposes, approved March 13, 1893," approved May 8, 1899, amended section one of the last mentioned act in the same manner.

Section one of an act entitled "An act to amend an act entitled 'An act to authorize the enclosing of certain lands on White River, in Independence County, and for other purposes,' approved March 13, 1893, and amended May 8, 1899," approved April 13, 1907, amended section one of the last mentioned act so as to read as follows: "That the owners of lands lying on and near White River, in Independence County, Arkansas, and with-

in the following described boundaries and limits, towit:   (here follows description of lands) be and they are hereby authorized to inclose said land with one continuous fence, provided, that the Black River and the White River boundaries of said lands shall be in lieu of any fence, except at the option of the owners of said lands fronting on said river," etc.

On the 11th of October, 1907, A. A. Henderson and eleven others filed in the Independence Circuit Court a petition for a writ of mandamus against T. H. Dearing, W. J. Waldrip and E. R. Moore, as the board of assessors of the aforementioned, fencing district, requiring them to ascertain the amount of fencing required by the foregoing acts to be built by each land-owner in the district and to do such other and further acts and things as are required of them as such board of assessors by said acts.

The defendants answered as follows:   "Defendants further say that the act of March 11, 1891, creating the fencing district in Big Bottom Township, contained certain provisions for the construction of a fence around the lands embraced in such district and creating a board of assessors, and that the defendants herein held their office as such board of assessors under and by virtue of the provisions of such act, but that the Legislature of 1893, by its act approved March 13, 1893, simply amended certain sections of the former act of 1891, without re-enacting the entire statute, and which amended sections in no wise related to the duty of the board of assessors as to constructing any fence or performing any of the duties sought to be imposed upon these defendants by plaintiffs, and that the said act of 1893 contains no provisions under which a fence could be built.

"That the said act of May 8, 1899, expressly amended section one of the said act of 1893 by enlarging the territory embraced in said fencing district, but was not amendatory to the act of March 11, 1891, and in no wise related or referred to it; nor did said act of 1899 make any provision for constructing any fence, or impose upon the board of assessors any of the duties sought to be imposed upon the defendants by plaintiffs.

"That the act of 1907 aforesaid expressly amended the act of March 13, 1893, as amended by the act of May 8, 1899, by enlarging said fencing (or purporting to do so), but did not re-

enact or amend any part of the act of March 11, 1891, nor did it make any provisions whatever for the construction of any fence, or the performing of any of the duties by the board of assessors of said fencing district now sought to be imposed upon these defendants by plaintiffs. The defendants further allege that the act of 1907 makes no provisions for the necessary expense· which these defendants will have to incur in order to lay out and apportion the amount of fencing to be done by the different landowners as prayed for by the plaintiffs; that before any apportionment could be made it will be necessary that the lines of said new territory be properly surveyed by a competent surveyor with the necessary assistance, all of which entail a considerable expenditure of money, for which no provision has been made by said act.

"That, in order to properly perform the duties sought to be laid upon them, these defendants would have to devote a large portion of time during many months, for which no provision for compensation has been made in said act."

The court permitted the defendants to amend their answer by alleging "that there is now an existing fencing district in a part of the territory sought by plaintiffs to be embraced in one district, and that the act of the Legislature under which plaintiffs seek to obtain a writ of mandamus against defendants make no provision for compensation to the owner of the lands in said district for the fence around said existing district sought to be used in said proposed new district, and that said act fails to show there will be any benefits accruing to the landowners in said old district, to compensate them for the burdens imposed by said act."

Plaintiffs demurred to the answer, which was overruled, and their petition was denied. Plaintiffs appealed.

The acts of March 11, 1891, of March 13, 1893, and May 8, 1899, were amended in the manner provided by the Constitution, that is, by re-enacting and publishing at length so much as was amended. In amending an amended part of the act of March 11, 1891, it was proper to re-enact and publish at length the amended part as amended, and in this way all the amendments of the act of March 13, 1893, became amendments of the act of March 11, 1891. The result of an amendment is to so change the original act as to make it read in the same manner it would

have read and to give it the same effect it would have had if it had been originally enacted as amended. *Mondschein* v. *State,* 55 Ark. 389; *Hempstead County* v. *Harkness,* 73 Ark. 600.

The Legislature has the power to create a fencing district by a special act. *Spillers* v. *Smith,* 85 Ark. 228. It had the right to change the boundaries of the district formed by the act of March 11 by the act of April 13, 1907, and did so. *Porter* v. *Waterman,* 77 Ark. 383; *Spillers* v. *Smith,* 85 Ark. 228. The fence of the district as first formed became the property of the district of the new boundaries.

Appellees say that "it is apparent on reading the act of 1907 that it imposes no duties on the assessors." But the act of March 11, 1891, of which it is a part, does. It requires the assessors to take an oath to faithfully perform their duties without prejudice or favor, and to apportion to said land owners the amount of fencing that would fall to his or her share as provided in section two of this act." Their duties are defined by the act of March 11, 1891, as it has been from time to time amended.

Appellees say that the district as formed by the act of March 11, 1891, was already protected by a fence, and those owning lands in that district could not be benefited by the change of boundaries. "No one," say they, "can suggest any benefit which the owners of land protected by the old fence would derive from taking it down and removing it further away, so as to include other lands." The presumption arising from the act creating the district is that all the owners of property in the district as changed by the act of April 13, 1907, will be benefited. *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54.

The object of the formation of fencing districts is to enable owners of the land included therein to fence the same at a reduced expense and to protect themselves against the encroachments of cattle and other live stock running at large. The greater the division of the expense, the less the part of each one. Fences decay; repairs are necessary; and expenses continually accrue. The increase of property in the district make the burden thereof lighter. In this way the extension of the district is beneficial.

Appellees say that, before any apportionment of the fencing to be done under the act of April 13, 1907, "can be made, it will

be necessary that the lines of said new territory be properly surveyed by a competent surveyor with the necessary assistance, all of which will entail a considerable expenditure of money, for which no provision has been made by said act." But it does not appear that any effort has been made to make the apportionment without such an expense, or that the boundaries of the district cannot be sufficiently ascertained for all practicable purposes from the owners of the lands on the boundaries.

No sufficient excuse is given in the answer of appellees for the failure to apportion the fencing of the district according to its new boundaries. They have assumed this duty, and should make an earnest effort to discharge it.

Judgment is reversed and cause remanded with directions to the court to sustain the demurrer to the answer.