JOSEPH BELL AND G. A. NASH, *Appellants*, v. CITY OF OCALA *et al., Appellees.*

"A majority of the registered voters of the city," as used in Section 12, Chapter 3963, Acts of 1889, must be construed to mean a majority of those qualified electors who actually voted at the election, and not a majority of all voters who had the right to vote. Those voters who are silent are supposed to assent that the question shall be determined by those who vote.

This case was decided by Division B.

Appealed from the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the court.

*H. M. Hampton,* for Appellants;

*Carlos L. Sistrunk,* for Appellees.

PARKHILL, J.—The bill of complaint filed by appellants against the City of Ocala, the mayor and members of the City Council alleges that complainants are citizens and residents of the City of Ocala and own property therein and pay to the city taxes upon their property; the mayor and city council in their corporate capacity were, when authorized by vote of the majority of the registered voters of the city, empowered to issue bonds for the purpose of paying the outstanding indebtedness of the city and for public improvements as will more fully appear by reference to Chapter 3963, Section 12 of the Acts of the Legislature of 1889, which is set forth in the bill; that on the 8th of April, 1911, an ordinance was duly passed by the city council and mayor of the City of Ocala for the bonding of said City of Ocala in the sum of one hundred thousand dollars for the purpose of buying and equipping or constructing and equipping waterworks therein, a copy of the ordinance being set out in the bill; that pursuant to the ordinance aforesaid on the 16th day of May, 1911, an election was held in said city for the purpose of determining whether bonds to amount aforesaid should be issued for the purpose aforesaid at which election one hundred and ninety-six votes were cast as follows: For bonds, one hundred and sixty-three; against bonds, twenty-four; votes thrown out, improperly marked, nine; that the said election was and is illegal and void, because, by the act of the legislature aforesaid, the mayor and council have authority to issue bonds only when authorized by a majority of the registered voters of the city; and the mayor and council have not been authorized by a majority of the registered voters of said city to issue bonds, because, on the day and date of said election, there were five hundred and seventy-five voters in said City of Ocala, appearing upon the registration books of said city of which three

hundred and thirty-three were actually qualified and eligible to vote in said election, that it would have required at said time not less than one hundred and sixty-seven votes in favor of bonds to have authorized the issuance thereof and only one hundred and sixty-three were cast in favor of the issuance of said bonds.

The bill prays for an injunction.

The bill was demurred to on the grounds as follows:

"1.   There is no equity in said bill of complaint as against these defendants.

2.   The bill of complaint shows upon its face that a majority of the persons voting at said election voted in favor of the issuing of bonds.

3.   The section of the act of the legislature set forth in the complainant's bill did not contemplate that a majority of all of the registered voters in the city should vote at such election in favor of bonds, only that a majority voting at said election should favor issuing said bonds.

4.   The bill of complaint shows upon its face, that a majority of the registered voters voting at said election have voted in favor of the issuance of bonds and that it is the duty of the defendants to issue said bonds."

The demurrer was sustained and the complainants not caring to amend, the bill was dismissed, and an appeal taken.

Both the act of the legislature and the ordinance of the city provide that the mayor and the city council may issue the bonds "when authorized by a vote of a majority of the registered voters of the city;" and the bill shows that a majority of the votes actually cast were in favor of the issuance of the bonds, but alleges the mayor and council were not authorized to issue bonds by a majority of the *registered voters.* Other allegations of the bill itself show that the contention that a majority of the *registered*

voters is necessary to the issuance of bonds is untenable, for the bill shows the registration list includes the names of 242 persons not qualified to vote in the election. "There were five hundred and seventy-five votes in said City of Ocala appearing upon the registration books of said city, of which three hundred and thirty-three were actually qualified and eligible to vote in said election." In other allegations, the bill seems to abandon the contention that a vote of a majority of the registered voters is necessary to the issuance of bonds, for the bill alleges that "it would have required at said time not less than *one hundred and sixty-seven* votes in favor of bonds to have authorized the issuance thereof"........that number being a majority of three hundred and thirty-three qualified voters.

We think the term "a majority of the registered voters of the city," as used in Section 12, Chapter 3963, must be construed to mean a majority of those qualified electors who actually voted at the election on the 16th day of May, 1911, and not a majority of all voters who had the right to vote. Those voters who are silent are supposed to assent that the question shall be determined by those who vote. State *ex rel.* Lanier v. County Commissioners of Sumter County, 19 Fla. 518, text 539; Pickett v. Russell, 42 Fla. 116, 28 South. Rep. 764; Everett v. Smith, 22 Minn. 53; 10 Ib. 107; 16 Ib. 249; State *ex rel.* Bassett v. Mayor of St. Joseph, 37 Mo. 270; County of Caff v. Johnston, 95 U. S. 360; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. Rep. 539.

The judgment is affirmed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.