G. H. Gill, et al, *Appellants,* v. A. H. Wilder, *Appellee.*

Division A.

Opinion Filed May 11, 1928.

*W. D. Bell,* of Arcadia, for Appellants;

*Milton D. Wilson,* of Bartow, for Appellee.

STRUM, J.—This suit is brought to test, in the respects hereinafter discussed, the validity under State and Federal Constitutions of Chap. 9580, Acts of 1923, as amended by Chap. 11024, Acts of 1925, prohibiting the running at large of cattle in Polk County.

Appellants, who were complainants below, brought a bill in equity seeking to enjoin appellee, defendant below, as Sheriff of Polk County, from impounding, offering for sale or selling any of complainants' cattle that might be found running at large in Polk County until such time as the county commissioners of said county shall construct a fence along such boundary lines of said county as may not have natural barriers to prevent the intrusion of cattle into said county from other counties where cattle may lawfully run at large. Complainants allege, and by answer and demurrer it is admitted, that they are the owners of large numbers of range cattle lawfully running at large in counties adjacent to Polk County; that under Sec. 12 of Chap. 9580, *supra*, which was made effective by the local election therein provided for, it became the duty of the County Commissioners of Polk County to construct as soon as practicable a fence around such portions of said county as were not bounded by a natural barrier; that such fence has not been constructed, but nevertheless the defendant sheriff threatens to impound complainants' cattle found running at large in Polk County and, if necessary, to sell the same under the provisions of said statutes. Complainants allege that the enforcement of said statutes according to their terms will deprive complainants of their property without due process of law contrary to State and Federal Constitutions. Further alleging the inadequacy of their remedy at law on account of the multiplicity of suits at law necessary to enforce their supposed rights in the premises, complainants pray an injunction. See Morgan v. City of Lakeland,

107 South. Rep. 269. Other allegations of the bill are noticed hereinafter.

The case was heard upon bill and answer, in which answer was incorporated a demurrer. From an order dismissing the bill, complainants appeal.

Complainants urge the statutes under consideration to be unconstitutional because: (1) the Legislature has no power to enact legislation of the character under consideration; (2) because the statutes provide for the impounding and sale of cattle without a judicial determination as to whether or not they are running at large within the meaning of the statute, and whether or not the costs and charges for impounding and feeding such cattle is reasonable; and (3) because the subject matter of Sec. 12 as amended by the Act of 1925 is not germane to the subject matter of Sec. 12 of the original Act of 1923, which it purports to amend, and therefore is not embraced within the title of the original Act, by reason whereof amended Sec. 12 is void, leaving original Sec. 12 in effect, and that the original Act does not authorize the impounding or sale of cattle running at large until the county commissioners shall have erected the fence provided for in original Sec. 12. The bill of complaint was filed August 19, 1925, subsequent to the effective date of the amendatory Act of 1925.

The cases are legion in which it is held competent for the Legislature in the exercise of the police power of the State to delegate to local governmental subdivisions, such as cities, the power to enact ordinances regulating the confining and running at large of cattle or live stock, and that such ordinances when reasonable are valid. Amongst other cases, see Waller v. Osban, 60 Fla. 268, 52 South. Rep. 970; Morgan v. City of Lakeland, 107 South. Rep. 269; Folmar v. Curtis (Ala.), 5 South. Rep. 678; and the many cases cited in 6 A. L. R. 229. Similarly, the Legislature by

plenary enactment may prohibit the running at large of live stock within a designated county and provide for the impounding and sale of offending live stock. The passage of such statutes have been held with great uniformity to be within the constitutional power of the Legislature. The police power of the State is not confined to the suppression of that which is offensive, disorderly or unsanitary, but embraces regulations reasonably designed to promote the public convenience or the general prosperity. Bacon v. Walker, 204 U. S. 311, 51 L. Ed. 499. Ownership of live stock within the State is subject to the police power thereof (See Bailey v. Van Pelt, 78 Fla. 337, 82 South. Rep. 789; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; 3 C. J. 172), in the exercise of which power the State may prohibit the running at large of such animals and provide for the impounding and sale of offending animals under proper regulations. Riser v. Umatilla County, 86 Pac. Rep. 595; Welch v. Bowen, 2 N. E. Rep. 222; Dillard v. Webb, 55 Ala. 468; Puckett v. Young, 37 S. E. Rep. 880; State v. Mathis, 63 S. E. Rep. 99; Henderson v. Dearing, 117 S. W. Rep. 1066. See also note 6 A. L. R. 215; 3 C. J. 173.

Such a law, when complete within itself, may be enacted to take effect in a designated county upon the vote of a majority of the qualified electors of the affected county. Dunn v. County Court (Ala.), 4 South. Rep. 661; Davis v. State (Ala.), 37 South. Rep. 454; Haigh v. Bell, 23 S. E. Rep. 666; 31 L. R. A. 131. See also the many cases cited in 6 A. L. R. 219. See also Bailey v. Van Pelt, *supra*.

When the farming and cattle raising industries in the same or adjacent portions of the State develop to the point where the two come in conflict, the State in the preservation of the public peace, safety, convenience and welfare may bring the situation into adjustment by the interposition of

reasonable regulations. Such regulations have been long since regarded as a lawful exercise of the police power. Whether such regulations, in cases of irreconcilable conflicts, shall subordinate stock raising to agriculture, or vice versa, is a matter for legislative determination. It is not a judicial question. In the exercise of its general power of control over the keeping of live stock, the State may prohibit altogether the running at large of such animals, and may provide as a remedy for enforcing such law that animals found astray shall be sold after proper notice to the owner, and time allowed for redemption. Tiedeman on Limitations of Police Power, p. 506; 3 C. J. 173.

The original Act of 1923, as effectuated by the local election therein provided for, provided in effect that it shall be unlawful for live stock to run or roam at large within Polk County. Sec. 5, as amended by the Act of 1925, provides in effect that any person may and it shall be the duty of the sheriff of said county, and of any constable within his district, to take up or cause to be impounded all live stock found running or roaming at large in said county, and that such impounder may demand $2.00 per head for impounding and 50c per head per day for keeping the animals, the impounder being required to feed, water and keep such live stock in as good condition as when impounded. Sec. 6 provides for notice to the owner of such impounded animals, or if the owner be unknown then to the sheriff of the county if the animals have been impounded by persons other than the sheriff, and for redemption by the owner within two days. In default of redemption, the Act authorizes a sale at public auction by the sheriff or a constable to pay impounding and keeping charges as prescribed by the Act, which sale is to be held not less than three days after notice thereof signed by the sheriff or constable published once in a newspaper of general circula-

tion in said county and posted at the court house, which notice shall state the time and place of sale and shall contain a full description of the animals to be sold. Out of the proceeds of the sale is first paid the costs of impounding and keeping said animals and the costs of the sale, the balance, if any, to be paid to the county commissioners from whom it may be redeemed by the owner of the cattle upon proper proof within sixty days, otherwise the same is retained for the benefit of the school fund. No charge, liability for damages or otherwise, forfeiture, or penalty is imposed upon the stock or its owners other than the reasonable cost of impounding and maintaining the stock, and the reasonable costs of sale. Such statutes have been repeatedly held valid as against the objection that such procedure deprives the owner of his property without due process of law. Folmar v. Curtis, 5 South. Rep. 678; Howell v. Daughet, 230 S. W. Rep. 559; 18 A. L. R. 63; Hogan v. Brown, 34 S. E. Rep. 411; Fall Creek Sheep Co. v. Walton, 136 Pac. Rep. 438; Ann Cas. 1915C, 1252; Randall v. Gross, 93 N. W. Rep. 223; Wilcox v. Hemming, 15 N. W. Rep. 435; Gosselink v. Clark, 4 Iowa (Clark) 296; Note 6 A. L. R. 230; 1 R. C. L. 1146; 12 C. J. 1284, and cases cited.

Due process of law does not in all cases require a resort to a court of justice before asserting the rights of the public against the individual in the lawful exercise of the police power. Davidson v. New Orleans, 96 U. S. 97; 24 L. Ed. 616.

Of course, where a recovery or penalty for damage done by the stock while at large is sought to be awarded, or damages of any character beyond the reasonable costs and expenses of impounding, keeping and selling are involved or are to be determined, or where a penalty of a criminal or a penal nature is to be imposed upon the owner, due process requires that those questions be determined only upon a

judicial investigation. The absence of the elements just mentioned usually furnishes the criterion by which the constitutionality of statutes of this character are tested as against objection based upon denial of due process. Greer v. Downey, 71 Pac. Rep. 900, 61 L. R. A. 408; Armstrong v. Traylor, 30 S. W. 440; Sutton v. State, 36 S. W. Rep. 697, 33 L. R. A. 589; Gilchrist v. Schmidling, 12 Kan. 263; Goesselink v. Clark, *supra*; 1 R. C. L. 1148.

Appellants also insist that since this Court has held in Carolina-Florida Planting Co. v. Maige, 64 Fla. 234, 60 South. Rep. 346, in construing a similar statute, that a mere accidental or unknown escape of cattle is not a "running at large" within the meaning of that statute, appellants are entitled to due process and a judicial determination upon the question of whether or not their cattle are running at large before such cattle are impounded and sold. See also Morgan v. City of Lakeland, *supra*. Statutes of this character are held valid as against the objection just mentioned because it is indispensable to the efficacy of such a regulation that immediate action be taken when stock is found at large in the prohibited·area. The impounder may frequently be ignorant as to the ownership thereof, and if he should be compelled to wait until the ownership should be ascertained and a judicial investigation had before impounding, the stock would be gone, the damage done and the statute rendered futile and impotent. After being impounded, the animals must be furnished with food and otherwise cared for while restrained, and if not promptly redeemed by the owner they must be disposed of before the expense of maintenance exceeds their value. Prompt and summary action of this nature is indispensable under such circumstances to fully effectuate the lawful exercise of the police power.

The ordinary remedies afforded by law, as by replevin or

trover, supplemented by equitable remedy by injunction when proper grounds therefor are shown, have been generally regarded as sufficient to afford due process and a judicial determination as to whether the animals were in fact running at large in violation of the statute and whether the provisions of the statute have been complied with. Folmar v. Curtis, 5 South. Rep. 678, and cases cited; Burdette v. Allen, 13 S. E. Rep. 1012; 14 L. R. A. 337; Wilcox v. Hemming, 15 N. W. Rep. 435; Hendricks v. Block, 97 S. W. Rep. 631; Spigener v. Rives (Ala.), 16 South. Rep. 74; Note 6 A. L. R. 230; 1 R. C. L. 1148.

If it was properly established that cattle about to be impounded or sold were at large by "mere accidental or unknown escape" from their owners, and "not negligently or designedly permitted to run at large without any effort being made to keep them within proper enclosures, or to recapture them when they escape without the knowledge of the owner or notwithstanding his efforts to restrain them" (see Carolina-Florida Planting Co. v. Maige, *supra*), and if it was also established that the remedy at law under the circumstances is not full, adequate and complete (see Morgan v. City of Lakeland, *supra*; McMullen v. Pinellas County, 106 South. Rep. 73), it may be that a court of equity would restrain the impounding or sale of such animals. The bill of complaint in this case, however, presents no such situation, and the mere prophecy, anticipation or threat that these circumstances may arise in the future, furnishes no sufficient reason to restrain generally the enforcement of the statute, or to declare it unconstitutional.

Appellants allege "that they do not carelessly permit their stock to run or roam at large in the County of Polk"; and that "they have endeavored to keep their cattle from running or roaming at large within the territorial boundaries of Polk County * * * and it has been a matter

of impossibility for your orators to keep their cattle from wandering over the county line from free range territory into Polk County''; and inferentially ''that they are using their utmost endeavors to prevent their cattle from wandering across the county line,'' which inability appellants claim is due to the failure of the County Commissioners to construct a fence around Polk County.

These allegations are mere conclusions, the facts to support them not appearing, and amount to no more than an assertion that appellants are unable to comply with the statutes, which is no ground for restraining the enforcement of a reasonable statute. Though these allegations be considered as true, the circumstances disclosed thereby do not establish a case of ''mere accidental or unknown escape'' under the extenuating circumstances defined in the Maige case, *supra*, so as to show a threatened impounding and sale of appellants' cattle in violation of the statute and otherwise under such circumstances as to justify restraint by injunction.

Section 12 of the original Act made it the duty of the County Commissioners of Polk County to construct as soon as practicable a wire fence around those portions of the county not protected by natural barriers. Section 12, as amended by Act of 1925, omits all reference to the construction of a fence and in lieu thereof provides in effect that the owner of live stock running or roaming at large within Polk County shall be liable to the person damaged for all damages caused by such stock. As this suit does not concern the recovery of damages under amended Section 12, it is unnecessary for us to decide whether or not the amended section is valid or whether it supersedes original Section 12. The constitutionality of a statutory provision will not be decided at the instance of a party who is not prejudiced, and whose rights are not affected by such pro-

vision, unless the provision assailed is of such a nature that, if unconstitutional, it would render invalid a provision of the statute that does affect the rights of such party. *In re*: DeWoody, 113 South. Rep. 677; Carolina-Florida Planting Co. v. Maige, *supra.* The following cases, however, may be found enlightening upon the question of the validity of the amendment; Peterson v. State, 56 S. W. Rep. 834; Thomas v. State, 188 S. W. Rep. 617. If the amendment is valid, appellants' contention that Chapter 9580 does not become operative until the fence provided for by original Section 12 is built, must fail. Even if the amendment is not valid, thereby leaving original Section 12 in effect, it does not appear to us to have been the legislative intent that the other provision of Chapter 9580, *supra,* should be held in abeyance and inoperative until the County Commissioners should have performed their duties under original Section 12 to erect a fence. Section 1 of the Act·provides: ''That from and after the passage of this Act and its ratification by a majority of the qualified voters of Polk County, Florida, it shall be unlawful for live stock to run or roam at large within the boundaries of Polk County, Florida, as hereinafter provided.'' Sec. 4 provides: ''That if at such election a majority of the votes cast shall be in favor of prohibiting live stock running or roaming at large within Polk County, Florida, such prohibition shall become effective July 1, A. D. 1924.'' A careful examination of the remainder of the Act, including Section 12 as originally enacted and as amended, fails to disclose any qualification of Sections 1 and 4 with respect to the effective date of the latter sections. See Puckett v. Young, 37 S. E. Rep. 880.

The decree appealed from is affirmed.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J. AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.