S. C. M. Thomas, as Sheriff of Marion County, *Appellant*, vs. FERDINAND MILLS, *Appellee*.

144 So. 882.

Opinion filed December 12, 1932.

*E. H. Martin*, for Appellant;

*Norris F. Baskin* and *W. E. Smith*, for Appellee.

PER CURIAM.—Chapter 15328, Laws of Florida, Special Acts of 1931, is a special and local law enacted to permit the qualified voters of Marion County, Florida, to decide whether livestock should be allowed to roam at large within said County, and to require the fencing of the boundaries of the County as an incident to the enactment of the statute. The election was called and held, as the Act provided, and the result was in favor of its ratification. Therefore under Section 14 of the Act, its prohibitions became effective January 1, 1932, subject to the terms and requirements therein stated.

Section 8 of Chapter 15328, *supra,* provides that it shall be the duty of the Board of County Commissioners of Marion County to construct as soon as practicable a fence of stated specifications along such county boundary lines of Marion County as may not have natural barriers sufficient to prevent the intrusion of cattle into Marion County and which are adjacent to open range territory, and at the same time to construct suitable cattle guards at points where public roads cross said boundary lines.

Marion County refused to comply with the provisions of Section 8, and notwithstanding such refusal, the officers of that County, including the appellant, S. C. M. Thomas, as Sheriff, persisted in enforcing the provisions of Chapter 15328 as against cattle straying into Marion County across the unfenced lines between Levy and Marion Counties.

The present suit was brought by a cattle owner of Levy County to restrain the Sheriff of Marion County from taking up and impounding cattle owned and kept by him in Levy County upon their straying across the unfenced boundaries between Levy and Marion Counties into the latter County. The Circuit Judge granted the injunction prayed for, and this appeal is from that ruling.

The learned Circuit Judge in considering this case in the Court below, and in granting the injunction against the enforcement of the 1931 local livestock law of Marion County (Chapter 15328, Special Acts) as against cattle straying into Marion County across the unfenced boundary between Levy and Marion Counties, said:

"It seems to me that there is no escape from the conclusion that the intent (of Chapter 15328) was that Marion County would, after January 1st, 1932, prohibit livestock running at large in this County on the following conditions or circumstances; that the County Commissioners (of Marion County) as soon as they deemed it practicable, shall build the following designated fence at the following designated places, to prevent cattle from open range territory from coming into Marion County.

It may have been competent for Marion County to have had passed a local statute prohibiting the running at large or roaming at large of livestock in this County, but we are not dealing with what legislation may or may not have been passed, but with the legislation that was enacted."

This Court agrees with the conclusion reached by the Circuit Judge as above stated.

The Constitution prohibits *all* local or special livestock laws unless notice of intention to apply for the passage of same has been duly published in the "locality" where the cattle or the "thing to be affected" may be "situated." The alternative of this proposition is that in lieu of notice a referendum election shall be called and held in "the territory affected" by such special or local law. See Section 21 of Article III of the Constitution.

A "stock" law is in derogation of the common law of this State as early declared by this Court in Savannah, F. & W. Ry. Co. vs. Geiger, 21 Fla. 669, 58 Am. Rep. 697. Therefore the passage of such a law supersedes the com-

mon law right to have livestock run at large in "territory affected."

That the "territory affected" by a livestock law is vastly greater than a single county with unfenced or otherwise unprotected boundaries, has been recognized by the Legislature from earliest times and provision to *localize* the effect to a single county has uniformly been made in nearly every local no fence Act passed, by requiring that before such local legislation shall be enforceable in a designated county, that county shall make the effect of such local law truly local in character by protecting its boundaries against stock that might stray in from adjoining territory. Thus the Legislature is on record to the effect that it recognized that a single county no fence law makes the "territory affected" by its operation much greater than the county boundaries in cases where situations exist in adjoining counties where cattle are located there which have the right to run at large in such adjoining territory.

The Circuit Judge was eminently correct in holding that the 1931 Marion County special and local livestock law was not to be construed as having been intended by the Legislature to become effective until the County Commissioners of Marion County had constructed the boundary line fences required to protect the rights of cattle owners of adjoining counties wherein the common law permitted them to allow their cattle to run at large.

The purpose of the fencing provisions of Section 8 of Chapter 15328, supra, was evidently to bring about the localization of the prohibitions of that law to Marion County territory only. This was to be accomplished by requiring the Board of County Commissioners of Marion County to fence the Marion County unprotected boundaries in such manner that the "territory affected" by the

law would not include any part of the adjoining counties constituting so-called "open range" territory.

Such a judicial construction of a statute should, if practicable, be adopted that will make an Act of the Legislature constitutional and effective, rather than one that will render such statute one of doubtful validity. State v. Amos, 76 Fla. 26, 79 Sou. Rep. 433.

To construe the instant special and local livestock law of Marion County otherwise than it has been construed by the Circuit Judge, would render such Act of at least *doubtful* constitutionality, as not having been passed either pursuant to notice published in "the territory affected," or pursuant to a referendum election held "in the territory affected." This is so because it appears in this case that neither notice of intention to pass a law "affecting" the common law rights of Levy County cattle owners was published in Levy County, nor was any election called and held in the "affected" open range territory of that County.

The common law is in force in this State except where it has been expressly modified by statute. The right of a cattle owner to permit his livestock to run at large is a Florida common law right existing under our own peculiar common law heretofore declared to exist in this State by the opinion of this Court handed down in the case of Savannah, F. & W. Ry. Co. v. Geiger, *supra*. It is a matter of common knowledge and experience that in practical operation and effect no one County special and local livestock law can be passed and put into effect in the territory of one county without affecting, and materially impairing, the common law rights of cattle owners in adjacent territory separated from the first county only by an imaginary boundary line and having no natural barriers to prevent cattle, which are permitted lawfully to run at large in one county, from crossing

over into the adjoining county "affected" by a special and local livestock law. The enforcement of such a special and local statute of one county therefore in practical operation affects the "territory" of adjoining counties by impairing the common law rights of cattle owners in such adjoining territory, and is therefore within the purview of the constitutional provision that requires the publication of notice of intention to apply for the passage of such law, or the holding of a referendum election in the "affected territory," before the Act can constitutionally become effective as a special or local law under amended Section 21 of Article III of the Constitution.

But a special or local livestock law can be so *localized* that it will not affect the territory of any other county. One of the means of doing this is by protecting the boundaries of the county wherein such special or local livestock law is to take effect. It is obvious that one of the simplest methods of completely accomplishing such localization is by requiring the territory of a county desiring a local or special livestock law to arrange for the fencing of its boundaries in such manner that no territory "can be affected" except the territory of the particular county.

An examination of practically every "no fence" law which has been passed during the past twenty years will disclose the circumstance that the Legislature has habitually provided *in terms* in such special acts for localizing the "affect" thereof to the counties to which they, by name, applied when bounded by territory of an adjoining county in which cattle was allowed to run at large under the "open range" common law policy declared by this Court many years ago in Savannah, F. & W. Ry. Co. vs. Geiger, *supra*.

To reject the Circuit Judge's construction of Chapter

15328 in the instant case would at once lay the special and local Marion County livestock statute open to a constitutional objection on the ground that its enforcement "affects" territory and persons in the adjoining County of Levy, where it was neither advertised nor voted on as a condition precedent to its becoming effective.

Nor is the case of Gill vs. Wilder, 95 Fla. 901, 116 Sou. Rep. 870, any authority to the contrary. In that case the Polk County statute (Chapter 9580, Acts of 1923) was a local law enacted before Section 21 of Article III of the Constitution was amended in 1928, so as to require notice of application for its passage to be shown by the legislative journals. No question of notice to "affect" adjoining territory was therefore involved in that case, because under the provisions of the Constitution, as they existed prior to the 1928 amendment, the court was required to presume in regard to that Act that the Legislature had found, before passing it, that it had been properly advertised in all "affected" territory. The fencing of boundary lines required by the Polk County Act was intended more as an act of policy than as a constitutional requirement for localizing its effect, because not advertised and voted on in adjoining territory "affected." This idea is borne out by the fact that it appears that in 1925 the Legislature enacted another local Polk County law (Chapter 11024, Acts of 1925), which seems to have repealed the fencing provision of the previous Act. But both Acts were passed under Section 21 of Article III before it was amended. Both Acts carry with them the presumption that proper advertising was had in the "affected" territory of Polk and adjoining counties before they were enacted.

But in the present case the Court must presume that the Legislature in enacting Chapter 15328, Acts of 1931, as a special and local law applicable only to Marion

County, was endeavoring to comply with the Constitution by passing that Act in such form, and with such limitations and conditions precedent to its effectiveness, as to prevent its being an infringement upon the rights of cattle owners in adjoining "affected" territory where it was neither advertised nor voted on as required by Section 21 of Article III of the Constitution as amended.

We therefore hold that Section 8 of Chapter 15328 operates as a limitation upon the taking effect of said Chapter and evidences an intent upon the part of the Legislature that Marion County could, after January 1, 1932, prohibit livestock from running at large in such county only on the condition that the County Commissioners of Marion County would, as soon as practicable, build a fence as required by said Section 8.

We therefore uphold the ruling of the Circuit Judge and affirm the decree appealed from.

Affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.