DR. J. H. HARRIS, WILLIAM G. TISON, DEWEY WEDSTED and C. H. LUNDY, v. ROY F. BADEN, as Sheriff of Manatee County, Florida.

17 So. (2nd) 608                            January Term, 1944
April 25, 1944                                 En Banc

*Wallace Tervin,* for appellants.

*G. B. Knowles,* for appellee.

SEBRING, J.:

Chapter 22380, Special Laws of Florida, 1943, prohibits cattle and certain other domestic animals from running or roaming at large in that portion of Manatee County, Florida, lying north of the Manatee River and west of the Range Line dividing Ranges 19 and 20 East; and makes it a misdemeanor for persons owning such livestock or having the same under their custody or control to allow them to run or roam at large there. The act also provides for impounding and for sale of such animals unless the same are redeemed by the owner and impounding fees are paid. The territory described adjoins and is contiguous to "open range" territory in Hillsborough County. There is no natural barrier or fence on the boundary line between the counties to prevent cattle straying across the line from Hillsborough County into Manatee County. No provision is made in the act for the erection by Manatee County of a fence or other artificial barrier along the county line sufficient to keep animals from straying across the county line.

J. H. Harris is a citizen and resident of Hillsborough County. He owns cattle which range back and forth across the boundary line between Hillsborough and Manatee counties, and which sometimes are allowed by him to run and roam at large in Manatee County. William G. Tison, Dewey Wedsted and C. H. Lundy are citizens and residents of Manatee County. They own cattle which run and roam at large in Manatee County.

A bill of complaint was filed by Harris, Tison, Wedsted and Lundy seeking to enjoin the sheriff of Manatee County from impounding and selling or otherwise molesting cattle belonging to them which were running or roaming at large in territory described, on the ground that no law forbade it, consequently no authority existed for taking up the cattle. On application the court entered an order against the sheriff, temporarily restraining him from impounding the cattle. On motion the injunction was subsequently dissolved and the bill

of complaint was dismissed. The appellants have taken this appeal from that order or decree.

The first contention of the appellants is that chapter 22380, Special Acts of 1943, never became operative as law because it was not approved and ratified by a majority of the qualified electors of the territory described in the act. Section 8 of Chapter 22380, supra, provides: "This Act shall become effective upon its being approved and ratified by a majority of the qualified electors of the territory described in Section One of this Act at an election to be held on the first Tuesday in August, 1943." All the territory described in Section One lies within Manatee County. It is shown by the record that there were 2674 registered voters residing in the territory at the time of election. A total of 377 of these electors voted in the election. Of the votes cast, 264 were for approval and ratification of the Act; 136 votes were against it. The appellants assert that it was necessary for at least a majority of the 2674 registered voters of the territory to participate in the election and vote in favor of approving and ratifying the act before it could become law. We do not agree. We are of opinion that the term "a majority of the qualified electors of the territory described in Section One of this Act at an election to be held on the first Tuesday in August, 1943" means a majority of the qualified electors of the territory who actually voted upon the measure at election day, and not a majority of the voters who may have had the right to vote. Electors who are qualified to vote at an election and yet do not avail themselves of this privilege are deemed to have assented that the question shall be determined by those who do vote. Bell v. City of Ocala, 62 Fla. 431, 56 So. 683; Pickett v. Russell, 42 Fla. 116, 28 So. 764; Lanier v. County Commissioners of Sumter County, 19 Fla. 518; County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517.

It is also submitted that Chapter 22380, supra, is invalid because not passed in compliance with Section 21 of Article III of the Constitution of Florida. Section 21 of Article III provides that "no local or special bill shall be passed . . .

unless notice of intention to apply therefor shall have been published . . . where the matter or thing to be affected may be situated . . . ; Provided, however, no publication of any such law shall be required hereunder when such law contains a provision to the effect that the same shall not become operative or effective until ratified or approved at a referendum election to be called and held in the territory affected in accordance with a provision therefor contained in such bill, or provided by general law." No notice of intention to apply for passage of the bill was ever published. Instead, the act provided for a referendum election to be participated in by the qualified electors of the territory of Manatee County described in the act. The appellants urge that a compliance with that part of Section 21 of Article III which requires an election "to be called and held in the territory affected in accordance with a provision therefor contained in such bill necessitated the inclusion in the act of a provision for voting at the election by the qualified electors of the "open range" territory of Hillsborough County adjacent to Manatee County; as that was "territory affected" by the proposed bill, within the purview of the Constitution as construed in the decisions of this Court. The argument is that the "territory affected" by a special or local livestock law is much greater than the designated territory of the single county which attempts to secure the passage of the bill, where the area sought to be made "closed range" adjoins or is contiguous to "open range" territory in a bordering county with no artificial or natural barrier intervening; hence, in order to "localize" such legislation so as to satisfy the requirements imposed by Section 21 of Article III, Constitution of Florida, it is mandatory, either that notice of intention to apply for the passage of such legislation be published in the adjoining county, or that the bill make specific provision for the qualified electors of the bordering county who live in the "open range" territory to vote in a referendum election for ratification or rejection of the bill, or that the bill require the moving county to erect a fence or other artificial barrier along the border line of the two counties sufficient to prevent cattle which may be lawfully running at large on the "open

range" from straying into the proposed "closed range" territory. The case of Thomas, Sheriff v. Mills, 107 Fla. 385, 144 So. 882; Teuton v. Thomas, 100 Fla. 78, 129 So. 330; Motes v. Hagan, Sheriff, 101 Fla. 995, 132 So. 676; Ramsey, Sheriff v. Martin, 111 Fla. 798, 150 So. 256; and In re Barber, 130 Fla. 342, 177 So. 708, are cited by the appellants as sustaining the proposition.

It must be admitted that at first impression much that was said in Thomas v. Mills, supra, and other cases cited, would seem to support, or at least suggest, the argument made by appellants' counsel. But we think that upon critical analysis it will be apparent that the language of the decisions upon which counsel relies, as addressed to the point at hand, was dicta upon a collateral subject and not essential to the question then pending. Moreover, we think that a study of the original records out of which the cited decisions grew will reveal distinguishing features between the cases and the case now at bar. All of these cited by the appellants involved the proper construction to be given to local and special no-fence laws which required the erection of county boundary-line fences before they could become completely operative. All of the cases were concerned with the proper construction to be given such requirement in the statutes in the light of the peculiar facts involved.

The decision in Thomas v. Mills turned on the construction to be given to a special and local law permitting the qualified electors of Marion County to determine whether livestock should be allowed to run or roam at large within said county, and to require the fencing of the boundaries of the county as an incident to the enactment of the statute. Marion County failed to erect the fence along the boundary line of Levy County which was "open range" territory. Nevertheless, the officers of Marion County persisted in impounding livestock which strayed across the unfenced lines from Levy County into Marion County. Upon a suit brought by a livestock owner residing in Levy County to enjoin the sheriff of Marion County from impounding certain of his cattle which had strayed from Levy County across the Marion County line, the circuit judge found that the cattle-

owner was entitled to his injunction, as the intention of the Legislature was that the bill should not become operative until such fence had been erected. On appeal the Supreme Court agreed with the conclusions reached by the circuit judge and affirmed the decree. The discussion by this Court as to what constitutional objections might have been successfully interposed by the prevailing party had the chancellor arrived at a different conclusion than he did, was dicta upon a collateral subject hence, not binding upon the court. All that the Supreme Court decided was that the cattle-owner was entitled to his injunction, there being no law then in operation that prohibited his cattle from straying into the Marion County territory.

This case was followed by the decision in Markham v. Thomas, Sheriff, 107 Fla. 392, 144 So. 885, to the same effect, handed down the same day. The suit was brought by Markham, a citizen and resident of Marion County, to enjoin the sheriff from impounding certain goats owned by him which were running at large in Marion County. The same no-fence law was in issue as was under consideration in Thomas v. Mills, supra. This Court found that the act was valid as a special and local law applicable to Marion County, but that by its terms it was not to become effective until after the fencing along the boundary lines of the county had been constructed. By way of dictum this Court made the observation that compliance with the fencing requirements of the act would necessarily relieve the act from the constitutional objection that to enforce the act against cattle-owners of Marion County, without enforcing it or making it effective against cattle-owners of adjoining counties, would deprive Marion County cattle-owners of the equal protection of the laws.

All that was decided in Teuton v. Thomas, Sheriff, 100 Fla. 78, 129 So. 330, was that a Marion County livestock law which provided that livestock found roaming within the county, which belonged to Marion County residents, were subject to be impounded and sold while livestock belonging to nonresident owners were not subject to such imposition, was unconstitutional and void as denying the equal protec-

tion of the law. The Court also found that this provision of the statute was inseparable from the remaining portions of the act that might otherwise have been valid; hence, the statute in its entirety had to fail. Motes v. Hagan, Sheriff, 101 Fla. 995, 132 So. 676, was a decision to the same effect.

The case of In re Barber, 130 Fla. 342, 177 So. 708, involved the proper construction to be placed upon a special or local livestock law which prohibited livestock from running or roaming at large in Duval County and made it a misdemeanor for a cattle-owner to allow his livestock to range there in violation of the Act. See Chapter 18510, Special Laws, 1937. Included in the bill was a provision requiring the County Commissioners of Duval County to construct a fence along the boundaries of the county where it was not separated from adjacent counties by natural barriers. Duval County did not build the fence, contending that it did not have to do so as a condition precedent to the Act becoming operative as against cattle straying into the county from adjoining counties, since notice of intention to apply for passage of the bill had been published in Clay, Bradford, Union, Baker, St. Johns and Nassau, being all the counties adjacent to Duval. Barber, who was a citizen and resident of Baker County, owned cattle on the open range of Nassau County. The cattle strayed across the line into Duval County. Barber was arrested for this alleged violation of the statute. He sought release by habeas corpus, in original proceeding in the Supreme Court, on ground that the statute had never become operative. On the hearing this Court rejected the contention made by counsel for Duval County that by giving notice of intention to apply for the passage of the bill in counties adjacent to Duval the statute could thus be made effective as against livestock owners of such counties, when the statute required in terms the erection of a boundary-line fence as a condition precedent to the Act becoming operative as to livestock straying into Duval County from bordering counties. It found that the Duval County No Fence Law was not to become enforceable as to livestock straying into Duval County from adjacent counties until the provisions relating to fencing were complied with;

although the act was valid as to livestock *roaming at large* in Duval County. When the opinion of the court is studied in the light of the questions presented by the record in the case, it is apparent that the gist of the holding is that as to cattle allowed by owners to habitually range or roam at large in Duval County (as distinguished from livestock which occasionally and inadvertently stray or wander over the line from adjoining counties) the act is valid and enforceable without regard to whether or not the boundary-line fence has been erected and without distinction as to whether such livestock originally came from within or without the territorial confines of Duval County; but as to straying cattle, it may not be enforced.

The decision was followed by Mizell v. Sweat, Sheriff, 130 Fla. 345, 177 So. 709; and Mizelle v. Sweat, Sheriff, 136 Fla. 458, 182 So. 409, holding to the same effect.

Coming now to the case at bar, Section 21 of Article III, Constitution of Florida, requires that unless notice of intention to apply for passage of a special or local bill is given where the matter or thing to be affected may be situated, such proposed bill must contain "a provision to the effect that the same shall not become operative or effective until ratified or approved at a referendum election to be called and held in the territory affected, in accordance with a provision therefor contained in such bill, or provided by general law." In our opinion that constitutional requirement was met by the provisions of Chapter 22380, Special Laws of Florida, 1943. The bill provided for an election to be participated in by such qualified electors as were resident in the Manatee County territory described in the bill. The "territory affected" by the bill was "that portion of Manatee County lying North of the Manatee River and West of the Range line dividing Ranges 19 and 20 (East)," being the territory described in the title and body of the Act. The "matter or thing to be affected" by the bill was the described area of land over which Manatee County thereafter proposed to exercise jurisdiction in the matter of the regulation of grazing of livestock. The law as enacted was complete within itself, and provision was made for it to take effect in the designated

territory upon the vote of a majority of the qualified electors of the "affected territory" of the county, participating in an election to be held for that purpose. Such election was held and the bill was duly ratified and approved. See Gill v. Wilder, 95 Fla. 901, 116 So. 870.

At the common law, every entry upon another's land, except by consent, was deemed a trespass for which satisfaction would lie. Every man's land was considered, as a matter of law, to be enclosed and set apart from his neighbor's either by a visible and material fence or by an ideal invisible boundary existing only in contemplation of the law. Moreover, a man was answerable not only for his own trespass but for that of his cattle also. And if by his negligent keeping they strayed upon the land of another, or if he drove them on, he was liable for the damage resulting. Savannah F. & W. Ry. Co. v. Geiger, 21 Fla. 669, 681. But as early as 1886 it was said by this Court, in Savannah F. & W. Ry. v. Geiger, supra, that this common-law rule had been abrogated in Florida by a legislative policy which recognized that, the stock raising industry then being of such importance to the State, resident owners of livestock and the right for their cattle and other domestic animals to range and graze on all unenclosed lands, even upon the lands of another, without liability for damage resulting therefrom. No doubt this case is still the law, where applicable. It has never been doubted, however, that the right of a livestock owner to so allow his cattle to run at large is subject always to regulation and control by the Legislature. Such right must always yield to valid legislation determined by the legislative branch to be in the public interest; the state in the exercise of the police power having the constitutional power to determine where, if at all, and under what circumstances, such animals may run at large. Williams v. Dormany, 99 Fla. 496, 126 So. 117; Gill v. Wilder, 95 Fla. 901, 116 So. 870; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789. When such legislation has been validly enacted, the owner's right to have his livestock run or roam at large is superseded to the extent of the applicable provisions of such statute. That which the Legislature has given

the Legislature may take away and its decision in the matter may not be disturbed by the judicial branch when a valid legislative determination has thus been made.

Chapter 22380, Special Laws, 1943, makes it unlawful for livestock, including cattle, to "run or roam at large," in certain designated territory in Manatee County. The effect of the statute is to supersede such right as may have formerly existed for a livestock owner to allow his livestock to run or roam at large in the closed area. When such animals are found they may be impounded pursuant to the provisions of the Act. The owner may be prosecuted for violation of the statute. The conclusion we have reached does not disturb the rights of a livestock owner to graze his animals on "open range" territory that may be available; he still has the right to run his animals there. And it would seem to follow (although the point is not raised here and consequently is not decided) that if an animal lawfully running in such open range territory—not an estray as defined in Sec. 707.01 Florida Statutes, 1941—should inadvertently wander or stray into the closed range territory described in the Act, its transient and temporary presence there would not be unlawful under the Act, and its owner might retrieve it without penalty, for the statute does not pretend to cover such cases but applies only to animals running or roaming at large.

The bill of complaint in the case at bar shows on its face that the appellants are allowing their cattle to "run or roam at large" in the closed range territory of Manatee County. It is alleged that the sheriff of Manatee County has threatened to impound them, and to otherwise proceed in accordance with the provisions of the statute. This the sheriff may lawfully do, under the facts alleged in the bill. It follows that the decree must be affirmed.

It is so ordered.

BROWN, CHAPMAN, THOMAS and ADAMS, JJ., concur.

BUFORD, C. J., dissents.

TERRELL, J., not participating.

BUFORD, C. J., dissenting:

I do not think the Act was ever ratified as required by the terms of the Act because the record shows that the Act has not become effective by "being approved and ratified by a majority of the qualified electors of the territory described in Section one of this Act at an election to be held on the first Tuesday in August 1943."

A majority of the designated electors did not vote in that election and the Act requires the *approval* of a majority of the qualified electors of the territory described.