FLORIDA MOTOR LINES, INC., *Petitioner*, v. RAILROAD COMMISSIONERS, *Respondents*.

Division B.

Opinion filed August 4, 1930.

Petition for rehearing denied September 4, 1930.

540

542

*Peter O. Knight* and *Knight, Thompson & Turner,* for Petitioner;

*T. T. Turnbull* and *Stanton Walker,* for Respondents.

WHITFIELD, J.—The material matters to be determined are whether an order of the railroad commission that is final in its nature and is predicated upon adversary hearing and affects conflicting claims of legal privileges, may be reviewed and should be quashed on a writ of certiorari issued upon the petition of a corporation claiming to have been injured in its legal privileges by the order.

"The writ of certiorari lies only to review the actions of courts, boards or officers exercising functions clearly judicial or *quasi* judicial." Sirmans v. Owens, 87 Fla. 485, 100 So. R. 734.

If an order of the railroad commissioners having a character of finality, is the exercise of authority that is either judicial or *quasi* judicial in its nature, it may be reviewed; and if illegal, it may be quashed on certiorari, since the railroad commissioners may, under the law, exercise either judicial or *quasi* judicial functions.

Under the Constitution, "the powers of the government of the State of Florida, shall be divided into three departments: Legislative, executive and judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution." Article II.

"The legislative authority of this State shall be vested in a Senate and a House of Representatives, which shall be designated, the legislature of the State of Florida." Sec. 1, Art. III. "The Supreme Executive power of the State shall be vested in a Chief Magistrate, who shall be styled the Governor of Florida." Sec. 1, Art. IV. The Constitution provides for six "administrative officers of the Executive Department." Secs. 20 and 28, Art. IV. Administrative and ministerial officers enforce the commands of the tribunals and officers of each of the three departments of the State Government. See State v. A. C. L. Ry., 56 Fla. 617, 32 L. R. A. (N. S.) 639; 47 So. R. 969.

"The judicial power of the State shall be vested in" stated courts "and such other courts or commissions as the legislature may from time to time ordain and establish." Sec. 1, Art. V, as amended in 1914. "The legislature * * * may clothe any railroad commission with judicial powers

in all matters connected with the functions of their office.''
Sec. 35, Art. V, as amended in 1910. Statutes confer upon
the Railroad Commissioners judicial powers to do or enforce
or perform any function, duty or power conferred upon
them. Secs. 6382 and 6748, Comp. Gen. Laws; Sec. 10, Ch.
13700, Acts 1929.

All governmental functions may not be among ''the pow-
ers of government'' which the Constitution separates into
three departments. Administrative and ministerial func-
tions may be incidental to or essential to the exercise or
execution of the ''powers'' that are divided into three de-
partments; and the performance of administrative func-
tions may require the exercise of judgment and discretion
that is in the nature of *quasi* legislative or *quasi* judicial
authority; and when not in conflict with some provision or
principle of organic law, statutes may authorize such func-
tions to be performed by administrative or ministerial
officers who do not exercise any of ''the powers of the gov-
ernment'' that are divided into the three departments;
legislative, executive and judicial. State v. A. C. L. R. Co.,
56 Fla. 617, 47 So. R. 969, 32 L. R. A. (N. S.) 639; Elijah
Johnson v. County of Wakulla, 28 Fla. 720, 9 So. 690;
State v. Holmes, 53 Fla. 226, 44 So. R. 179. 21 Fla. 492,
text 506.

''The powers of the government'' that are ''divided into
three departments'' are not defined or enumerated in the
Constitution or by statute. They are to be determined as
occasion requires by a consideration of the language and
intent of the Constitution as well as of the history, the
nature and the powers, limitations and purposes of the
Republican form of government established and maintained
under the Federal and State Constitutions. The essential
nature and effect of the governmental function to be per-
formed, rather than the name given to the function or to
the officer who performs it, should be considered in deter-

mining whether the particular function is a "power of Government" within the meaning of the Constitution; and if it is such a "power," whether it is legislative, executive or judicial in its nature, so that it may be exercised by appropriate officers of the proper department. If the duty or function required by law to be performed, is *not* one of "the powers of government" that is or must be assigned to only one department and that cannot be exercised by those "properly belonging to" another department, "except in cases expressly provided for by the Constitution," then the legislature may by statute authorize or require the performance of such governmental duty or function by those "properly belonging to" any of the three departments, provided such a performance of such statutory duty or function is not inconsistent with applicable provisions or principles of organic law.

Under the constitution of this state statutory administrative officers cannot legally perform functions that are among the legislative, executive or judicial "powers of the government;" but statutes may within appropriate limitations, authorize such administrative officers to perform *quasi* legislative or *quasi* judicial functions that are designed to effectuate a valid legislative purpose, when the administrative functions so authorized are consistent with organic law. The chief legislative power is the law making function.

The legislature is in session only during limited periods, and statutes cannot always anticipate and provide for complicated and contingent conditions in governmental affairs, therefore "functions that are *quasi* legislative in their nature are with appropriate limitations conferred by statute upon administrative officers to effectuate the statutory purpose. Railroad Commissioners v. P. & A. R. R. Co., 24 Fla. 417, 5 So. R. 129; 2 L. R. A. 504; 12

Am. St. R. 220; Bailey v. Van Pelt, 78 Fla. 337, 83 So. R. 789; State v. A. C. L. R. R. Co., 56 Fla. 617, 47 So. R. 969; 32 L. R. A. (N. S.) 639; Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150.

Likewise there are complicated and contingent details in the performance of *quasi* judicial functions that may be legally and more expeditiously performed by administrative officers when duly authorized to effectuate a proper legislative purpose and organic law is not thereby violated. See State ex rel Hubbard v. Holmes et al., 53 Fla. 226, 44 So. R. 179; State ex rel. Young, et al. v. Duval County, 76 Fla. 180, 79 So. R. 692; City of Jacksonville v. L'Engle, 20 Fla. 344. In either case the action taken is subject to judicial review. See State ex rel. Att'y. Gen. v. Gibson, 48 Fla. 162, 37 So. R. 651.

Under Section 35, Article V of the Constitution as amended in 1910, "the legislature * * * may clothe any railroad commission with judicial powers in all matters connected with the functions of their office." Sec. 10, Chap. 13700, provides that "the (Railroad) Commission shall, as for as the Constitution of this State permits, exercise all such judicial powers as may be necessary to enable it to enforce or perform any duty, power of function conferred on it by this Act." Whether a function is judicial or *quasi* judicial must be determined from its essential nature and attributes and the law applicable thereto. See 112 C. J. 121.

"The railroad commissioners are statutory administrative officers who exercise only statutory authority. Their administrative authority, functions and duties are not among "the powers of government" which are by the constitution separated into legislative, executive and judicial "powers" and which must be exercised only by appropriate officers "properly belonging to" one of the three "depart-

ments of the government of the State of Florida.'' The authority conferred by statute under Section 30, Article XVI, constitution, to prescribe just and reasonable rates, rules and regulations for the service rendered by common carriers and others "performing services of a public nature," is *quasi* legislative in its nature; but such authority *as conferred and limited* by the statute is not one of "the powers of the government of the State of Florida" that *must* be exercised only by the legislature. State ex rel. Swearingen v. R. R. Com., 79 Fla. 526, 84 So. R. 444. Section 30, Article XVI, of the constitution contemplates that such *quasi* legislative authority may by statute be conferred with required limitations upon appropriate administrative officers or commissioners in order to effectuate the regulatory purpose of the legislature. Likewise as to *quasi* judicial functions, conferred by statute upon the railroad commissioners. They are not judicial "powers" that must be exercised only by the courts. This is particularly so as to *quasi* judicial functions in view of the authority of the legislature under the provision of amended Section 35, Article V, constitution, authorizing the legislature to clothe any railroad commission with judicial powers *in all matters connected with the functions of their office.* See also Section 1, Article V, constitution as amended.

Statutes confer upon the State Board of Law Examiners *quasi* judicial powers that had theretofore been exercised by the courts. See State of Folrida ex rel. Clyatt v. Hocker, Judge, 39 Fla. 477, 22 So. R. 721; 63 A. L. R. 174. Sections 4182 *et seq.,* Comp. Gen. Laws. Likewise as to the State Board of Medical Examiners, Sections 3404, Comp. Gen. Laws, and Florida Real Estate Commission, Sections 4063 *et seq.,* Comp. Gen. Laws. See also Sections 3469 *et seq.,* Comp. Gen. Laws. And by statute the writ of certiorari lies to review acts of such boards. Sections 3415 and 3485, Comp. Gen. Laws.

It was held in State v. Brown, 19 Fla. 563, that the statutory authority to hear and determine complaints against the holders of licenses and to revoke licenses, is a judicial function. See Section 4087, Comp. Gen. Laws. It is a *quasi* judicial function. See Prettyman, Inc., v. Fla. R. R. Com., 92 Fla. 515, 109 So. R. 442. If revoking a license on complaint and hearing is a judicial function, the granting of a license upon adversary hearing and in the exercise of a determining judgment affecting claims of adversary privileges is a *quasi* judicial function. Being a *quasi* judicial function, its exercise may be reviewed on writ of certiorari in proper cases, where no other remedy is provided by law. 11 C. J. 123. Chapter 13700 here considered expressly confers judicial power upon the roadroad commission as authorized by amended Section 35, Article V, Constitution, and the statute also expressly recognizes the right to a judicial review of orders revoking the permit or license certificates issued under the act. Section 7. If revoking a certificate issued under Chapter 13700 is expressly attempted to be made subject to appellate review as a judicial function, then certainly the issue of such certificates after the prescribed adversary hearing and determination of conflicting claims in the exercise of judgment and discretion, is a *quasi* judicial function, though not a "judicial power" that can lawfully be exercised only by the courts; and the exercise of a *quasi* judicial function by a court or by a commission under a statute, may be reviewed on *certiorari* in appropriate cases, no other remedy being afforded by the law. 11 C. J. 123.

It is the essential nature of the official act that determines whether it is *quasi* judicial. If the action is taken on prescribed adversary hearing and involves the exercise of independent judgment in determining controversies that directly affect adversary legal rights or privileges claimed by individuals, it is at least *quasi* judicial and may be reviewed

on *certiorari* in proper cases if the action has the character of finality and no other remedy is prescribed or allowed by law. 11 C. J. 121 *et seq.*

Under Section 30, Article XVI, Constitution, *quasi* legislative functions within appropriate limitations may be conferred upon the railroad commissioners, and under amended Section 35, Article V, *quasi* judicial functions may be likewise conferred upon any railroad commission *"in all matters connected with the functions of their office,"* provided that in either case no other provision of organic law is thereby violated; and the exercise of such functions is subject to authorized appropriate judicial review, the dominant purpose of the controlling law in allowing such judicial review to enforce lawful governmental authority and to protect private rights as provided by law and determined by the courts, as is provided and contemplated by the Constitution.

In this State the appointment and removal of officials involves the exercise of governmental authority that is executive, not judicial, in its nature. Westlake v. Merritt, 85 Fla. 28, 95 So. R. 662; State of Florida v. J. Johnson, 30 Fla. 433, 11 So. R. 845. Removals from office not involving the exercise of a judicial or *quasi* judicial function will not be reviewed on write of *certiorari,* Owens v. Bond, 85 Fla. 495, 91 So. R. 686; Sirmans v. Owens et al., 87 Fla. 485, 100 So. R. 734. No exercise of an executive power or function is involved in this case. See State ex rel. Bridges v. Henry, 60 Fla. 246, 53 So. R. 742.

In Digge v. Hitchcock, 229 U. S. 162, 171, where *certiorari* was denied to review an executive order of the Postmaster General made under a statute forbidding the use of the mails to stated "fraudulent" matter, it is said that the statute was primarily for the benefit of the public at

large and the order was for them and their protection, therefore the order was administrative merely and equity afforded a remedy against the order. In that case it is said:

"The writ of *certiorari* is an extraordinary remedy and in deciding that it will not issue in a particular case this court does not anticipate in what cases exceptional facts may call for its use." See 11 C. J. 110.

Under the common law in force in this State, a statute providing for due notice and an adversary hearing by a legal official body, of conflicting claims to new and special rights or privileges conferred by the statute, and for the due exercise by the official body of independent judgment in making an authoritative determination of the contested claims under the law, the determinative order granting or denying the right or privilege under the statute, may be *quasi* judicial in its nature and have the quality of finality, making a writ of *certiorari* a proper means for a permissible judicial review of the order where no other remedy is afforded by law.

In this case the statute authorizes the granting of certificates of necessity and convenience conferring upon companies privileges to engage in the business of transportation for hire over the public roads of the State, the granting of which privileges involve a hearing and determination of adversary claims of private parties under the statute as well as the rights of the public. In statutes of this State similar to Chapter 13700, the writ of *certiorari* is expressly recognized as appropriate. See Sections 3415 and 3485, Comp. Gen. Laws. State v. Rose, 97 Fla. 710, 122 So. R. 225.

The Constitution provides that the Supreme Court "shall have the power to issue writs of * * * *certiorari*, * * *."

"The writ of *certiorari* may be issued to final judicial or *quasi* judicial orders that are alleged to be invalid, where no other adequate remedy is afforded by appellate procedure or otherwise." H. E. Prettyman, Inc., v. The Fla. Real Estate Com., ex rel. Branham, 92 Fla. 515, 109 So. R. 442.

In J. T. & K. W. Ry. Co. v. Antone Boy, 34 Fla. 389, 394, 16 So. R. 290, it is said:

"The Supreme Court has power to review and quash on the common law writ of *certiorari*, the proceedings of inferior tribunals when they proceed in a cause without jurisdiction, or when their procedure is essentially irregular and not according to the essential requirements of law and no appeal or direct method of reviewing the proceedings exist.

"A distinction is made by some courts where the writ goes to inferior courts of record, and cases when it goes to officers or boards exercising only *quasi* judicial powers in proceedings of a summary character out of the course of the common law. In the first class of cases it is held the record only can be examined to ascertain whether such courts have acted within the scope of their jurisdictional powers, while in the second the record will be examined not only to see whether such officers or boards have kept within their jurisdictional powers, but whether or not they have acted strictly according to law, and errors and irregularities committed by them will be corrected. Milwaukee Iron Co. v. Schubel, 29 Wis. 444; State ex rel. Moreland v. Whitford, 54 Wis. 150; Cunningham v. Squires, 2 W. Va. 422.

"At common law *certiorari* lies only to inferior courts and officers exercising judicial powers, and then

only to review an act judicial in its nature, and not merely ministerial, but where a new jurisdiction is created, the proceedings so authorized, whether in court or not, if of a judicial or *quasi* judicial character, and not subject to review by other means, may be reviewed by writ of *certiorari*," Davidson v. Whitehill et al., 87 Vt. 499, 500.

Section 10, Chapter 13700, confers upon the railroad Commissioners "such judicial powers as may be necessary to * * * perform any duty, power or function conferred." Such provision is expressly authorized by Section 35, Article V, constitution. The authority conferred upon the railroad commissioners by the statute, that is judicial or *quasi* judicial in its character, is not shown to violate any provision of the constitution. It does not deprive the courts of the State of any jurisdiction conferred upon them or any of them by the constitution. The statute provides for the filing of applications to the railroad commissioners for certificates of public convenience and necessity to operate motor vehicles in the business of transportation for compensation over the public highways of the State and for giving stated notice and an opportunity to be heard "to the applicant and to all transportation companies serving any part of the route between the fixed termini and to the mayor or chief magistrate of each city or town in or through which the applicant desires to operate;" and "to any transportation company holding a certificate * * * and operating over the route * * * specified in the application", and further provides that "at or after such hearing the Commission may issue a Certificate of Public Convenience and Necessity, as prayed for or refuse to issue the same, or may issue the same with modification, or upon such terms and conditions as in its judgment the public convenience and necessity may require." These

functions involve more adversary claims and more judg-
ment and discretion of a judicial nature that did the stat-
utory provisions in State v. Holmes, 53 Fla. 226, 44 So.
R. 179.

The above quoted provisions of the statute and the nature
of the duties prescribed, require the performance of *quasi*
judicial functions by the railroad commissioners; and such
provisions do not violate the constitution. As the order
is the exercise of a *quasi* judicial function conferred by
law upon the railroad commissioners and is final in its
character, the writ of *certiorari* is a proper means for a
judicial review of such order, no other remedy being afford-
ed by the law.

On writ of *certiorari* the ultimate adjudication is to quash
the judgment or order that is reviewed or to quash the
writ of *certiorari*. First National Bank v. Gibbs, 78 Fla. 118,
82 So. R. 618; State v. L. O. & P., 70 Fla. 564, 70 So. R.
550.

The respondents move to quash the writ of *certiorari*
on grounds: that it appears upon the face of the petition
that (1) the railroad commissioners had jurisdiction and
were exercising lawful authority when they made the order;
(2) The order is deemed and held to be within their juris-
diction and to be reasonable and just and it does not appear
that the railroad commissioners acted illegally in making
the order; (3) the order ''was made after taking the sworn
evidence of all persons offered in said cause,'' and it is
sought to substitute the judgement of the court for that
of the railroad commissioners ''upon the same facts of
record;'' (4) ''The petition shows on its face that this
court has no jurisdiction in the cause set up therein.''

Section 8, Chapter 13700, provides that:

''Every rule, regulation, decision, order or require-
ment made by the said Commission under the pro-

visions of this Act shall be deemed and held to be within its jurisdiction and powers, and to be reasonable and just and such as ought to have been made in the premises, and to have been properly made and arrived at in due form of procedure, and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or can be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears.''

The statute provides that

''The Commission may issue a certificate of Public Convenience and Necessity, as prayed for or refuse to issue the same, or may issue the same with modification, or upon such terms and conditions as in its judgment the public convenience and necessity may require; Provided, That in granting application for certificate, the Commission may take into consideration the length of time the applicant has operated a scheduled motor vehicle service between the termini named in the application; the general standard of the service maintained during this period; the reliability of the applicant and his sense of responsibility toward the public as shown during the period of his operation; his court record as well as the effect that the granting of such certificate may have upon other transportation facilities within the territory sought to be served by such applicant, and also the effect upon transportation as a whole within the said territory and any other matters tending to qualify or disqualify him as a common carrier.

Provided. That a Certificate of Public Convenience and Necessity shall upon hearing be granted as a matter of right to such Auto Transportation Companies operating in good faith on the 19th day of April,.

1929, over the route for which such certificate shall be sought, who shall comply in full with the provisions of this Act." Section 3, Chapter 13700, Acts 1929.

It appears that on October 24, 1929, upon application and hearing a Certificate of Public Convenience and Necessity was issued to Florida Motor Lines, to operate motor busses for compensation in transporting passengers by the same service and over the same routes operated over on April 19, 1929, on all the highways of the state then being operated upon by the applicant, and especially over State Highway No. 4, between Jacksonville and Miami; that petitioner had ample bus equipment allocated to the route to adequately serve the public; that after a hearing and determination a Certificate of Public Convenience and Necessity was also issued to the Georgia-Florida Motor Lines, Inc., to operate on State Road No. 4, five seven passenger sedan automobiles that it had on 19th of April 1927 operated between Jacksonville and Miami; that upon petition filed by the Georgia-Florida Motor Lines, Inc., and after a protest by the petitioner and a hearing, the Georgia-Florida Motor Lines, Inc., were authorized to substitute four twenty-five passenger busses for the seven pasenger sedans theretofore operated over State Road No. 4, between Jacksonville and Miami, the finding of the railroad commissioners being as follows:

"That the granting of said application of the Georgia-Florida Motor Lines to substitute busses for the sedans used in said service was necessary and proper for the service, accommodation, and convenience and safety of the public traveling over said route, and reasonably required in the interest of public convenience and necessity."

The petitioner contends that no public convenience or necessity was shown for authorizing the substitution of four 25-passenger busses for 5 seven-passenger sedans on the Jacksonville-Miami route; that it was shown that petitioner had in operation and allocated to said route under its certificate of convenience and necessity, equipment sufficient to take care of more than twice the number of passengers then being taken care of; that no fault was found with the service or equipment of petitioner; that although petitioner contested the application for the substitution of busses for sedans by the Georgia-Florida Motor Lines, Inc., and offered to furnish any facilities or any equipment or any service that the commissioners thought necessary in order to serve public convenience and necessity, the railroad commission made the order complained of.

The application to substitute four 25-passenger busses for five 7-passenger sedans on the same route was, at least with reference to others rendering similar service over the same route, in the nature of an application for new service on the route. One of the provisions of the statute is that:

"When application is made by an auto transportation company for a certificate to operate in a territory or on a line already served by a certificate holder under this Act the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities to the satisfaction of said commission."

Under such statutory limitations upon the authority of the railroad commissioners, they should have given to the petitioner here, who was already rendering similar service on the route with busses, and opportunity to supply the additional or enlarged equipment and service if needed for

the public service, at least on proportionate parity with the Georgia-Florida Motor Lines, Inc. Furthermore, the statute regulates the use of the public highways of the State in the business of transportation for compensation; and the statute contemplates that in granting certificates of public convenience and necessity authorizing the use of the public roads in such transportation, the railroad commissioners shall give due consideration to the size, weight and number of vehicles used in such business so that vehicles not necessary for the public service may be excluded from the highways, with a view to the proper use and preservation of the public roads and to the safety and convenience of the traveling public of the State who have primary rights in the preservation, safety and use of the highways maintained by taxation.

"Where there is substantial evidence to sustain an administrative regulation, and no rule of law is violated by the regulation, the courts will in general enforce it. But as a matter of organic law the making of such regulation is not conclusive of their validity; and, where a regulation is promulgated without substantial evidence to support it, or in violation or disregard of controlling provisions or principles of law to the injury of fundamental rights, or its practical operation would be essentially unreasonable or unjust to those affected by it, the courts will not enforce it." State. v. Jacksonville Terminal C., 90 Fla. 721, 106 So. R. 576, 578. See also Gulf & S. I. R. Co. v. Adams, 85 Miss. 772, 38 So. R. 348.

If it is duly made to appear in appropriate judicial proceedings that the railroad commissioners have made an order that is materially injurious to legal rights or privileges, without giving appropriate consideration to matters,

affecting such rights and privileges which matters the law contemplates shall be considered in making the order complained of, thereby misapplying the law in making the order, such order may be adjudged to be invalid. See Int. Com. Comm. v. Union Pacific R. R., 222 U. S. 541, 32 Sup. Ct. R. 108, 56 L. Ed. 308. See also St. L. & O'Fallion R. Co. v. U. S., 279 U. S. 461, text 493, 49 Sup. Ct. R. 384, 73 L. Ed. 798.

In this case it appears from the evidence adduced and from the proceedings had, that in making the order here challenged the railroad commissioners did not give due consideration to the statutory privileges claimed by the petitioner who was rendering a similar service by busses on the same route, and has adequate busses allocated to the route to amply serve the public convenience and necessity, or to the rights of the public to exclude all *unnecessary* vehicles, particularly those that are large and heavy, from operating for hire, over the public highways that should be made and kept safe and suitable for general public use and free from undue risks and hazards to the public and from needless wearing use for hire of the roads that are maintained by the public.

The order of the railroad commission complained of is subject to review on a writ of *certiorari,* and the order made is not warranted by the showing made in the record under the law that is applicable thereto, therefore, the motion to quash the writ of *certiorari* is denied, and the order complained of is quashed.

TERRELL, C. J., AND ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.