STATE, *ex rel.* WILLIAM SIDEBOTTOM, v. D. C. COLEMAN, Sheriff, Dade County.

165 So. 569.

Division B.

Opinion Filed February 1, 1936.

A. C. *Franks*, for Plaintiff in Error;

Cary D. *Landis*, Attorney General, and *Roy Campbell*, Assistant, for Defendant in Error.

BUFORD, J.—Plaintiff in error was petitioner in the court below in habeas corpus proceedings. His contention is that under Section 3 of Chapter 16047, Acts of 1933, he may lawfully operate several retail stores and manufacture his frozen desserts in one plant from which no retail sales are made but from which he supplies each of his several retail stores, all under a single retail manufacturer's license fee of $10.00 where the manufacturing plant does not supply for retail sale any of its product to stores not owned by the licensee.

The petitioner alleges that he owns and operates "an ice cream plant at 733 N. W. 34th St., in the City of Miami, and owns and operates in addition thereto three retail ice cream stores located at 2424 N. W. 7th Avenue, at 1400 W. Flagler St., and one on Northwest 17th St.," and that he manufactures frozen desserts at said factory for the exclusive purpose of supplying the same to the said three stores for sale and distribution to the public and that he

does not sell any of his products at retail from the factory and that he sells none of said products at wholesale from the factory but only manufactures the products there and sells them through his said three retail stores.

The information charges in the first count:

"That William Sidebottom of the County of Dade and State of Florida on the 10th day of June, in the year of our Lord one thousand nine hundred and thirty-five, in the county and State aforesaid, being then and there a retail manufacturer of frozen desserts at No. 733 N. W. 34th Street, City of Miami, Dade County, Florida, did operate four retail stores for the retail sale of said frozen desserts where the said frozen desserts so manufactured by said William Sidebottom were on said date sold, said retail stores being located at 2425 N. W. 7th Avenue, 1400 W. Flagler Street and 733 N. W. 34th Street, in the City of Miami, being located in the same building as said retail manufacturing plant, all of said stores being located in the City of Miami, Dade County, Florida, without first securing a license as a retail manufacturer, and without paying the required manufacturer's license fee of ten dollars for each said retail store, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Florida."

Sections 2 and 3 of the Act above referred to are as follows:

"Section 2. Application for License.—Every manufacturer of frozen desserts produced for sale shall file with the Commissioner of Agriculture an application for a license upon a form prescribed by the Commissioner. The application must show that the frozen desserts manufactured by the applicant are composed of pure and wholesome ingredients and are produced under sanitary conditions. The

application shall also show the location of each plant at which frozen desserts are to be manufactured and the name of the brand, or brands, if any, under which the same are to be sold. The license period shall be for twelve months beginning October first.

"Section 3. License Fee.—The license fee shall be Fifty Dollars for each manufacturing plant shown in the application of frozen dessert manufacturers doing a wholesale business and ten dollars for each retail store shown in the application of a retail manufacturer. There shall be no fee for the issuance of a license to a hotel, restaurant or boarding house, for the manufacture of frozen desserts sold to the patrons thereof for consumption exclusively on the premises where manufactured. The fee shall be tendered to the Commissioner with the application, and upon the issuance of the license shall be remitted by the Commissioner to the State Treasury. All such fees shall be credited to the frozen desserts enforcement fund, and shall be appropriated annually to the department for the enforcement of this Act."

As we construe Sections 2 and 3 of Chapter 16047, they fix a license fee of $10.00 for each plant which manufactures frozen desserts for distribution at retail. The Act further imposes a license tax of $10.00 for each retail store selling frozen desserts, as described in the Act, at retail.

It, therefore, follows that under the law a manufacturer of frozen desserts is required to pay $10.00 license tax for the operation of a manufacturing plant which distributes its products at retail, but does not sell at wholesale, and is also required to pay $10.00 license tax for each retail store owned and operated by him for the retail sale of such frozen desserts, while, if he sells frozen desserts at wholesale from

his manufacturing plant he is required to pay a license tax of $50.00.

The application for license is as follows, to-wit:

"Pursuant to the requirements of Section 2 of Chapter 16047, No. 190, Laws of Florida, Acts of 1933, I, *Sidebottom Ice Cream Company,* Florida, hereby make application for State license as a manufacturer of frozen desserts. I am a retail manufacturer.

"I state under oath, that all frozen desserts that I manufacture are composed of only pure and wholesome ingredients and are manufactured under sanitary conditions.

"My plant or plants are located at the following places:

"*733 N. W. 34th Street, Miami, Florida.*

The brand names of my frozen desserts are as follows:

"*Sidebottom Ice Cream Company.*

"I agree to obey the Florida Frozen Desserts Law and all rules and regulations promulgated for its enforcement and recognize that this license may be revoked or suspended for cause.

"(Signed) SIDEBOTTOM ICE CREAM CO.
"WM. SIDEBOTTOM."

It it the contention of petitioner that because he has applied for license and paid the fee of $10.00 required in the Act of one who manufactures frozen desserts at retail only, he is not required to pay any other license. We do not think this contention is tenable. If the petitioner does not sell frozen desserts at his manufacturing plant either at wholesale or retail, then there is no provision in the Act which requires him to pay a license tax to engage in the operation of that plant, but the Act specifically provides that a manufacturer should pay $10.00 for each retail store shown in the application of a retail manufacturer. The petitioner

does not deny that he is a manufacturer of frozen desserts which he sells at retail and he avers that he sells such desserts at retail in three different stores located as above stated and, therefore, he is required to pay the tax of $10.00 each on these three stores.

The first count of the information charges that petitioner is operating these three stores without having paid the license tax required.

Under the provisions of this Act, a manufacturer of frozen desserts may manufacture his own stock in trade in one location and dispose of his product at retail from that location when he does not engage in the disposition of it at wholesale, by paying the license tax of $10.00, and he may distribute his product to other. like retail stores operated by him and dispose of it at retail from such other stores by paying a license tax of $10.00 for each additional store. He is as much a manufacturer of the goods for retail distribution as if he had manufactured the stock necessary for each store in that particular store and as long as he manufactures only for retail sale, and not for wholesale distribution, he can only be required to pay the tax required of a retail manufacturer and not that required of a wholesale manufacturer.

The petitioner's contention appears to be that because he manufactures all of the frozen desserts which he sells at retail at one place he is not required to pay for license tax for operating more than one store and that he may dispose of his product at retail in as many stores as he sees fit without being required to pay the additional retail store tax on each additional store.

The plaintiff in error further contends that the construction which we place upon the statute would render the statute unconstitutional because of being repugnant to Sec-

tion 1, Article IX, of the Constitution. Section 1, Article IX, of the Constitution does not refer to excise taxes and as the tax here under consideration is an excise tax, that section of the Constitution has no application.

For the reasons stated, the judgment should be affirmed. It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.