HAROLD N. ROBINSON, Doing Business as THE SEMINOLE LAUNDRY, v. FLORIDA DRY CLEANING & LAUNDRY BOARD, a Political Body Existing Under Chapter 17894, Laws of Florida.

194 So. 269

En Banc

Opinion Filed February 23, 1940

900

*J. Tom Watson,* for Appellant;

*Rogers, Towers & Bailey, C. C. Bailey* and *Taylor Jones,* for Appellee.

CHAPMAN, J.—This case presents for determination certain questions challenging the constitutionality of Chapter 17894, Laws of Florida, Acts of 1937. Many constitutional questions concerning Chapter 17894, *supra,* have been considered and settled by this Court. See Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759; Economy Cash & Carry Laundry, Inc., v. Florida Dry Cleaning & Laundry Board, 136 Fla. 243, 186 So. 422; Florida Dry Cleaning & Laundry Board v. Everglades Laundry, 137 Fla. 290, 188 So. 380; State *ex rel* Florida Dry Cleaning & Laundry Board v. Atkinson, 136 Fla. 528, 188 So. 834; Economy Cash & Carry Cleaners v. Florida Dry Cleaning & Laundry Board, 138 Fla. 642, 190 So. 31; Florida Dry Cleaning & Laundry Board v. Everglades Laundry, 138 Fla. 646, 190 So. 33. It is contended on this record that the grounds or reasons assigned for the unconstitutionality of Chapter 17894, *supra,* were not presented and were not considered or determined by Court when the Act was before the Court as shown by the cases, *supra.* Counsel contends that additional constitutional questions, not previously considered, can be presented and relies upon Jordan v. State *ex rel.* Davis, 100 Fla. 493, 128 So. 35; DiLustro v. Penton, 106 Fla. 198, 142 So. 898; State *ex rel.* Fulton v. Ives, 123 Fla. 401, 167 So. 394, and other cited authorities.

It is contended that certain grants of power to the laundry board on the part of the Legislature render Chapter 17894, *supra,* invalid and that same is a local measure and contra-

venes Sections 20 and 21 of Article III om the Constitution of Florida, and the provisions are, viz.:

"(a)   To supervise and regulate the entire cleaning, dyeing, pressing and laundry industry of the State of Florida;

"(b)   To classify and establish definite trade areas, and provide definite rules, regulations and charges therefor;

"(c)   To establish health and sanitary requirements;

"(d)   To fix minimum and maximum prices, or either, for services in separate trade areas in connection with the industry thereby regulated;

"(e)   To establish rules and regulations;

"(f)   To fix rules and regulations for the conduct of the Board's business, and for the regulation of its employees;

"(g)   To issue, assess and collect county and State licenses; and to define and establish definitions and classifications for licenses and services, and types of services for the businesses, and for employees reasonably connected therewith;

"(h)   To require examination of license applications to test their general fitness to engage in such businesses;

"(i)   To revoke, suspend, issue or refuse to issue the license of any person, firm or corporation thereunder, under given circumstances;

"(j)   To issue and collect for licenses;

"(k)   To regulate all other matters reasonably incidental to the general or specific powers therein recited;

"(l)   To establish rules and regulations for holding hearings in keeping with the procedure thereby authorized;

"(m)   To issue subpoenas requiring persons to appear before the Board for the purpose of giving testimony and producing evidence;

"(n) To require the production of books, papers or accounts at Board hearings;

"(o) To establish rules and regulations for the issuance and service of such subpoenas;

"(p) To administer oaths, make investigations, conduct hearing and take testimony in connection with the investigation of complaints, or in the exercise of the main functions of said Board;

"(q) The said Board is also authorized and empowered to classify certain types of business, to-wit: new laundrymen, itinerant laundrymen, temporary or transient laundrymen, or dry cleaners, and all other laundrymen and dry cleaners embraced within the terms of said Act into 'reasonable classifications and require higher or different license fees from such type or proprietors than other licensed proprietors;' and to issue and collect for such licenses.

"(r) Said Board is also clothed with power to prescribe rules and regulations for the assessing and collecting of license fees, for the classification and defining of various services and those engaged in the business attempted to be regulated by the Act, and to provide all necessary machinery for prompt collection of any and all license fees assessed, and may take all steps reasonable and necessary as authorized in said law to prevent any person performing any service within the purview of said law without first taking out or paying the license fees prescribed and required, including the alleged right and power to seek an injunction without notice against persons, firms or corporations liable for such license;

"(s) Said Board is also authorized to classify licenses, and to issue licenses limited to particular trade area or areas in the State, and to make each or several counties embraced within its purview a separate and distinct trade

area; and said Board has made a trade area of each of such counties, except Pinellas, which has been made into three trade areas, as will be more definitely described hereainfter."

It is first contended that the Act offends Section 20 of Article III of the Constitution in that it is limited in its operation to counties in Florida containing 17,500 population or more, and that the Act allows the Laundry Board to create an area within the City of Jacksonville, Miami or Tampa, including a part or either of these cities; or areas, may be made of several counties or several areas may be created in one county. It is pointed out that the Laundry Board administering the Act has created three areas in Pinellas County. The answer to the contention that the Act is unreasonable because the basis of classification is by counties where the population is 17,500, or more, is fully expressed by this Court in Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759 (text page 13), where this Court said:

"The fact that the Act assaulted is limited in its application to counties of more than 17,500 population goes to the question of classification and is not deemed to be arbitrary or unreasonable. Liggett Co. v. Amos, 104 Fla. 609, 141 So. 153; Liggett Co. v. Lee, 109 Fla. 477, 149 So. 8; State, et al., v. Minge, et al., 119 Fla. 515, 160 So. 670."

The bill of complaint alleges that the plaintiff, Harold N. Robinson, doing business as The Seminole Laundry, for many years, has been engaged in the laundry and dry cleaning business in the City of Tampa, Hillsborough County, Florida. The plaintiff here alleges the administration of Chapter 17894 by the Laundry Board in the Pinellas County areas, while his place of business is situated in Hillsborough County. There is no allegation, or allegations, in the bill of complaint to the effect that he will be affected by or is

prejudiced in some manner by the enforcement of the Act in Pinellas County. It is settled law that the constitutionality of an Act cannot be questioned by a party whose rights are not affected. It has not been shown or made to appear that the rights of the plaintiff will be affected while operating his laundry in Hillsborough County, and his trade, in whole or in part, is not drawn from one of the areas in Pinellas County. The plaintiff failed to show that his interests were adversely affected and therefore is not in a position to be heard in this Court on the question. See *In Re:* Dewoody, 94 Fla. 96, 113 So. 677; *Ex Parte* Smith, 100 Fla. 1, 128 So. 864; County Com'rs. v. State, 24 Fla. 55, 3 So. 471, 12 Am. St. Rep. 183; Boyd v. State, 33 Fla. 316, 14 So. 836; State v. Phillips, 70 Fla. 340, 70 So. 367, Ann. Cas. 1918A, 138; Stinson v. State, 63 Fla. 42, 58 So. 722; Gill v. Wilder, 95 Fla. 901, 116 So. 870; Land v. State, 77 Fla. 212, 81 So. 159; State v. Johnson, 102 Fla. 19, 135 So. 816; Sebring v. Wolf, 105 Fla. 516, 141 So. 736.

Counsel for appellant contends that Chapter 17894 confers on the Laundry Board an unconstitutional licensing power and thereby offends Section 1 of Article IX of the Constitution of Florida, relating to uniformity of taxation, and Section 17 of Article V, making it the duty of the county judge to issue all licenses required by law to be issued in the county. Section 7 of Chapter 17894 provides that in order to regulate the industry and to provide funds for the administration of the Act, the Laundry Board shall have authority to collect from all those engaged in the service and industry as defined in the Act license fees in the amount named. It will be observed that the authority to impose license fees on those engaged in the business is for the purpose of regulation and the expense of administration of the Act by the Board. It is not an Act to raise money for

governmental purposes, and uniformity of taxation is· not required, neither does this contention have any application to an excise or license tax as imposed by this Act. We are not here considering an ad valorem tax upon property which may require uniformity under Section 1 of Article IX of the Constitution. See Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320; Jacksonville Gas Co. v. Lee, 110 Fla. 61, 148 So. 188; State *ex rel.* Didebottom v. Coleman, 122 Fla. 434, 167 So. 569.

Section 17 of Article V provides that the county judge shall issue all licenses required by law to be issued in the county. It is contended that Chapter 17894 offends the constitutional provisions, *supra,* in that the Act permits or allows the Board to issue licenses to those affected by the Act. It is clear that the license provided for by the Act is a State license, limited to the areas and to the persons, firms or corporations operating within these areas, and the Board is clothed with the power to issue the licenses and to accept the money and the same is to be used in the regulation and administration of the Act. While it is true that the county judge of a county is by the constitutional provision, *supra,* authorized by law to issue all licenses to be issued in the county, this provision does not preclude the Legislature from enacting a law imposing a State license fee. See State *ex rel.* Davis v. Rose, 97 Fla. 710, 122 So. 225; *Ex parte* Gilletti, 70 Fla. 442, 70 So. 446; Jackson v. Neff, 64 Fla. 326, 60 So. 350.

It is next contended that Chapter 17894 is unconstitutional and void in that it violates Sections 1 and 10 of Article XVI of the Constitution of Florida by permitting or allowing the Board to establish its principal office elsewhere than in Tallahassee and that all the administrative officers of the executive department shall keep their offices at the seat

of government. It has not been shown that the officers named in the Act are administrative officers of the executive department within the meaning of Section 10 of Article XVI of the Constitution. See State *ex rel.* Davis v. Rose, 97 Fla. 710, 122 So. 225.

Counsel for appellant contends that the title to Chapter 17894 fails to give notice of the contents of the Act and thereby violates Section 16 of Article III of the Constitution of Florida. It is unnecessary to set out *in extensio* the title or the arguments presented to support this assignment. This Court, in the case of State *ex rel.* Lichenstein v. Coleman, 133 Fla. 717, 183 So. 163, sustained the title of the Act, and in so doing said:

"We gather from reading this title that the real subject of the Act is to provide for the regulation of the cleaning, dyeing, pressing, and laundry industry under one board, and to provide for the creation of such board and to define its powers, jurisdiction and duties, including the power to fix reasonable charges for services rendered by such industries.

"We think this might be construed as stating one single subject within the meaning of the Constitution, and that all matters properly connected with such subject could be included in the Act without indexing them in the title. We have held in a number of cases that an elaborate title may not violate the Constitution if it can be construed to express only a single subject, but that the title must not express two or more distinct subjects, and the Act must not contain any provision that it not covered by the single subject expressed in the title, or that is not matter properly connected with or germane to such single subject."

The next assignment is that Chapter 17894 offends Section 27 of Article III of the Constitution of Florida in that it is a limitation upon the appointive powers of the

Governor. The answer to this contention is found in the case of Miami Laundry Co. v. Florida Dry Cleaning and Laundry Board, 134 Fla. 1, 183 So. 759, where it is said:

"In requiring the three members of the Board should be chosen from the cleaning industry, three members from the laundry industry and one member to represent the public, we do not understand the Act to do more than require that three members of the board must have had experience in the laundry business and three members must have had experience in the cleaning business. In other words, all the Act does is to prescribe certain qualifications for those appointed to it. We do not construe such requirements to unduly restrict the appointive power. State *ex rel.* Landis v. Ward, 117 Fla. 585, 158 So. 273; State *ex rel.* Buford v. Daniel, 87 Fla. 270, 99 So. 804."

It is contended that Chapter 17894 is invalid and violates Section 1 of Article III of the Constitution in that there is an unlawful delegation of legislative and judicial power on the Laundry Board. This point was decided by this Court adversely to the contention of counsel in the case of Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759. See Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; Florida Motor Lines v. Railroad Commissioners, 100 Fla. 548, 129 So. 876; Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809; State *ex rel.* Mason v. Rose, 122 Fla. 413, 165 So. 347; Richardson v. Baldwin, 124 Fla. 233, 168 So. 255.

Counsel in his brief contends that Chapter 17894 offends Section 30 of Article XVI of the Constitution of Florida. We think the answer to this contention is found in the case of Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, *supra,* text pages 8-10, where it was said:

"Liberty of contract and the right to use one's property

as he wills are fundamental constitutional guaranties, but the degree of such guaranties must be determined in the light of social and economic conditions that prevail at the time the guaranty is proposed to be exercised rather than at the time the Constitution was approved securing it; otherwise the power of the Legislature becomes static and helpless to regulate and extend them to new conditions that constantly arise.

"Constitutional guaranties have never been thought to be immune from regulation or limitation in the interest of the common good. When limited, the process has been evolutionary rather than spontaneous. Regulation might be appropriately denied today that could be just as appropriately granted tomorrow. When the exercise of a constitutional guaranty is limited to such a small sector of the population that the rights of the public will be protected by unrestricted competition, the Legislature will not generally attempt to regulate, but when large numbers become involved, many of whom are unequal in the race, and their economic security becomes imperiled through the exercise of what may appear to be the constitutional right of another, then the Legislature has not hesitated to step in and regulate.

"The factors determining the regulation of a trade, business, or profession are for legislative determination, but they have generally been actuated by public necessity. If done in the exercise of the public power, the health, morals, and welfare must be involved. It has also been said that the business regulated must be affected by or clothed with a public interest, but regardless of the basis on which done, if public necessity requires it would be contrary to every concept of social justice to hold that the Legislature could not grant relief. One may "Robinson Crusoe like" isolate

himself and thereby enjoy the complete unrestricted exercise of his constitutional guaranties, but the moment he becomes a unit in organized society, he surrenders a measure of his freedom and the more thickly that society becomes populated the more complex. its means of making a living become, the more freedom he must make up his mind to surrender.

"There is no magic in the phrase, 'clothed with or affected with a public interest.' Any business is affected by a public interest when it reaches such proportions that the interest of the public demands that it be reasonably regulated to conserve the rights of the public and when this point is reached, the liberty of contract must necessarily be restricted. If the regulation involves the question of price limitation, it will be upheld unless clearly shown to be arbitrary, discriminating, or beyond the power of the Legislature to enforce. Nebbia v. New York, 291 U. S. 502, 54 Sup. Ct. 505, 78 L. Ed. 940; Bordens Farm Products Co., Inc., v. Ten Eyck, 297 U. S. 251, 56 Sup. Ct. 453, 80 L. Ed. 669; West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 Sup. Ct. 578, 81 L. Ed. 703; Highland Farms Dairy v. Agnew, 300 U. S. 608, 57 Sup. Ct. 549, 81 L. Ed. 835; Miami Home Milk Products Asociation v. Milk Control Board, 124 Fla. 797, 169 So. 541. See also inferences from Economy Cash & Carry Cleaners, Inc., v. Cleaning, Dyeing & Pressing Board," 128 Fla. 408, 174 So. 829; "Coleman, Sheriff, v. Lichtenstein," 128 Fla. 408, 174 So. 829; "and Bon Ton Cleaners & Dyers, Inc., v. Cleaning, Dyeing & Pressing Board," 128 Fla. 535, 176 So. 55.

It is an established rule in this Court that one who asserts the unconstitutionality of a statute should show beyond all reasonable doubt that the statute conflicts with some designated provision of the Constitution. See Neisel v. Moran,

80 Fla. 98, 85 So. 346; Board of Com'rs. Everglades Dr. Dist. v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 So. 199. All doubts as to the constitutionality of a statute are to be resolved in favor of the statute. See Dutton Phosphate Co. v. Pirest, 67 Fla. 370, 65 So. 282.

We fail to find error in the record and the decree appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD, BUFORD and THOMAS, J. J., concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

THOMAS, J. (concurring).—I concur in the opinion of the Court, having the conviction that it is in harmony with the former decisions on the questions involved.