### Application of PETROLEUM CARRIER CORPORATION.

Railroad & Public Utilities Commission.

February 28, 1957.

Martin Sack, Jacksonville, for applicant.

Lewis H. Hill III, Hill, Hill & Dickenson, Tampa, for Rockana Carriers, Inc., as its interest might appear.

Chairman ALAN S. BOYD, commissioners JERRY W. CARTER and WILBUR C. KING participated in the disposition of this application.

BY THE COMMISSION.

The commission by its designated examiner, J. J. Daniel, held a public hearing on this application pursuant to notice on November 5, 1956 at 2255 Oak St., Jacksonville.

After the hearing the examiner filed his report and recommendations in the form of a proposed order, recommending the granting of the application. Exceptions to the proposed order were filed by Rockana Carriers, Inc. After due consideration of the entire record in this cause, the commission now enters its order in the premises.

By this application Petroleum Carrier Corporation seeks an extension of its certificate of public convenience and necessity so as to authorize the transportation in common carriage of sand, in bulk, in hopper type or dump trucks from White Sand Pit about 3 miles south of Gold Head Branch State Park approximately 7 miles north of Keystone Heights to points within a radius of 50 miles of such pit. This hearing was held for the purpose of receiving testimony to enable the commission to determine whether or not the proposed transportation is exempt from the jurisdiction of the commission and if not exempt whether or not the application should be granted.

The only public witness presented by applicant in support of the application was an individual who is in the road paving business. This individual has a lease on a sand pit 3 miles south of Gold Head Branch State Park. He testified that the sand from this pit is suitable for making asphalt but not concrete. The transportation sought by this application is necessary to the asphalt paving business conducted by this witness. The sand is transported from the pit to the business location of this witness in Jacksonville, where it is mixed with asphalt.

This commission in its order #3717 entered on January 18, 1957 in docket #4753-CCT, on the application of Rockana Carriers, Inc. for a certificate [10 Fla. Supp. 56], and again in order #3750 entered February 19, 1957 in docket #4845-CCT, on the application of Fertilizer Carrier, Inc. for a certificate, held this type of transportation to be exempt from commission jurisdiction and control. Section 323.29, Florida Statutes 1955, provides that—

"There shall be exempted from the provisions of this chapter and from commission jurisdiction and control . . . motor vehicles while engaged exclusively in transporting goods, wares, merchandise, horticultural, agricultural, or logs, lumber or other forest products . . . from the point of production to that point of primary manufacture, or from the point of production to the point of assembling the same, or from either

such point of production, primary manufacture or assembling to a shipping point of either a rail, water, or motor transportation company, usually and generally serving the territory in which said production, manufacture, or assembling takes place."

This same statute also provides that—

"There shall be further exempted from . . . commission jurisdiction and control, motor vehicles used exclusively in transporting agricultural or horticultural products, supplies, and materials, including fertilizer and sprays, when delivered direct to the growers or consumers, or to an association of such growers and consumers."

In both of the above mentioned orders we ruled transportation of sand to be exempt from a point of production (the sand pit) to a point of primary manufacture—to a fertilizer mixing plant where it is mixed as a filler into mixed fertilizer. In the former order, order #3717, we also ruled transportation of crushed rock to be exempt from a point of production (the point where it is mined and crushed) to a point of primary manufacture—to an asphalt road mix manufacturing plant where it is mixed into hot and cold asphalt mix for road paving.

The transportation of sand in the present case from the sand pit to the asphalt mixing plant of applicant's witness would fall within the foregoing statutory exemption and no authority is required from this commission for its transportation.

The application is therefore dismissed.