### Application of ROCKANA CARRIERS, Inc. (No. 2).

Railroad & Public Utilities Commission.

June 19 and August 9, 1957.

Chairman ALAN S. BOYD and Commissioner JERRY W. CARTER participated in the disposition of this matter, Commissioner WILBUR C. KING not participating.

BY THE COMMISSION.

*Order on petitions for rehearing, June 19, 1957:* On January 18, 1957 the commission entered its order #3717 [10 Fla. Supp. 56] granting the application in part but ruling that certain of the transportation for which authority was sought was exempt from this commission's jurisdiction and control by the terms of section 323.29, Florida Statutes 1955.

Within the 15 day period allowed by our rules of practice and procedure, petitions for rehearing were filed by protestant railroads, the Seaboard Air Line and Atlantic Coast Line, and by the applicant, Rockana Carriers, Inc.

### Protestant Railroads' Petition for Rehearing

The railroads question only the ruling in the order that transportation for compensation of sand, phosphatic sand, clay and crushed rock are exempt from commission jurisdiction and control under provisions of section 323.29.

We did not hold that all transportation of said commodities was exempt, but only transportation performed under the circumstances outlined in items (4), (5) and (6) on sheet 7 of order #3717 [p. 64, 10 Fla. Supp.].

We should have added that under provisions of section 323.29 the exemption would apply only to hauls consisting of the exempt commodities only—mixed loads of both exempt and non-exempt commodities would render the entire load non-exempt.

Section 323.29 provides in part—

*"Recognizing and declaring that the transportation exempted in this section is casual, seasonal and not on regular routes or schedules, is slow moving, frequently in special equipment, and for comparatively short distances over the improved highways of the state,* there shall be exempted from the provisions of this chapter, and from commission jurisdiction and control, motor vehicles (other than those engaged on common carrier service), used exclusively in transporting children to and from schools; transportation companies engaged in taxi-cab service, or the operation of hotel busses to or from depots and hotels, serving the same town or city; and motor vehicles while engaged exclusively in transporting goods, wares, merchandise, horticultural, agricultural, or logs, lumber or other forest products, fish, oysters and shrimp, and dairy products, from the point of production to that point of primary manufacture, or from the point of production to the point of assembling the same, or from either such point of production, primary manufacture or assembling to a shipping point of either a rail, water or motor transportation company, usually and generally serving the territory in which said production, manufacture or assembling takes place. There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, or over and upon state road number seventy-eight south to Ponte Vedra and the territory adjacent to said state road within a radius of ten miles thereof, where such business of carriage is regulated by the legislative body of such cities or towns. * * *

"There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, motor vehicles used exclusively in transporting agricultural or horticultural products, supplies and materials, including fertilizers and sprays, when delivered direct to the growers or consumers, or to an association of such growers or consumers." (Italics added.)

The railroads contend that unless the particular transportation "is casual, seasonal and not on regular routes or schedules, is slow moving, frequently in special equipment, and for comparatively short distances over the improved highways of the state" the exemption does not apply.

These things, however, are not by the statute made criteria for the application of the exemptions—they are merely set forth in an introductory phrase or preamble as generally descriptive of the transportation subsequently defined to be exempt.

The introductory wording is not used in a restrictive sense. The circumstance that the transportation which is exempted by specific terms following the introductory phrase is not all properly described in the phrase would not by the wording used nullify the specifically declared exemptions because the introductory phrase is not stated as a condition.

In addition to transportation of goods, wares, merchandise, etc. from a point of production to a point of primary manufacture, this section also specifically exempts transportation within the corporate limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, and transportation over and upon state road number seventy-eight south of Ponte Vedra and the territory adjacent to said state road within a radius of ten miles thereof.

Certainly, it can no more be said that such transportation is casual, seasonal, not on regular routes or schedules, etc., than the transportation of goods, wares, merchandise, etc. from a point of production to a point of primary manufacture is casual, seasonal, etc. It is apparent from the specific exemptions declared in this section that the introductory language does not provide the controlling criteria but is simply a legislative attempt to describe in general terms the general characteristics of much of the transportation therein contained.

Protestant railroads also contend that sand, phosphatic sand, clay and crushed rock are not exempt as they are not goods, wares and merchandise. We must differ with this conclusion of protestants. The meaning of this phrase would depend upon the connection in which it is employed. Certainly, goods, wares and merchandise is broad phraseology which would include all personal property sold in trade. From the testimony it is apparent that the sand, clay and crushed rock for which transportation authority is sought is here being sold in trade.

Next, protestants contend the exemptions do not apply even if the questioned commodities are goods, wares and merchandise as they are not horticultural, or agricultural goods, wares and merchandise. As we view the statute, however, the context in which the words "horticultural" and "agricultural" are used amplifies or broadens the exemption to make certain the phrase "goods, wares and merchandise" will also include horticultural or agricultural goods, wares and merchandise. If it had been intended to limit the exemption as contended by protestants the wording would have been unequivocal, such as—"horticultural or agricultural goods, wares and merchandise" rather than the wording used—". . . goods, wares, merchandise, horticultural, agricultural, or logs, lumber or other forest products, fish, oysters and shrimp, and dairy products, . . ."

Lastly, protestants contend that they were not given an opportunity to be heard on the issue of the application of the exemptions. Protestants had full notice and knowledge of the issues in this case and a full hearing. Questions of exemptions were raised repeatedly throughout the hearing. In addition, protestants have fully argued the exemption questions in their petition for rehearing, which is in the nature of a brief. It would serve no useful purpose to now hold a further hearing relative to these exemptions.

Protestants also ask that the portion of order #3717 concerning exempt transportation be stayed pending disposition of another case which is before the Supreme Court (Atlantic Coast Line Ry. Co., et al, v. Haulsmore, Inc., case #98520-C). This commission has not entered a stay of its order in that case, however, and we have not been advised of any stay by the court. We are not parties to that suit which is a collateral attack by protestant railroads upon a previous order of this commission ruling certain transportation to be exempt. After due consideration of the petition for rehearing and oral argument for stay of order, we find it should be denied.

### Applicant's Petition for Rehearing

Applicant has filed a petition for rehearing contending as follows—

1. Petitioner says that this commission in its order under subhead (3) [p. 6, 10 Fla. Supp.] granted authority to haul ammoniated sulphate from Hillsborough County to Polk County and that the commission should have granted authority from Hillsborough County to both Polk and St. Lucie counties.

2. That in subhead (7) authority was granted for nitrogen from Escambia County to Pasco County and from Hillsborough

County to Polk County, that the authority should have been from Escambia and Santa Rosa counties to Pasco County, and that the definition should have been nitrogen or nitrate.

3. That in subhead (10) authority was granted to transport salt from Hillsborough County to Polk County and the same should have been to transport salt from Hillsborough County to points and places in the state.

After reviewing the testimony and evidence in this cause we find applicant's petition for rehearing as to item no. 1 above should be denied.

As to item no. 2, the testimony shows a need for transportation of nitrogen from Pensacola or Pace to Pasco County. The community of Pace is located in Santa Rosa County. The grant of authority under subhead (7) should be amended to read—*Nitrogen* from Escambia and Santa Rosa counties to Pasco County and from Hillsborough County to Polk County.

Applicant contends under item no. 2 that nitrogen is a gas and that the grant of authority should have been for "nitrogen or nitrate." We have been unable to find support in the record for this contention. Applicant's witnesses referred to this commodity as nitrogen—a solid form of nitrogen—and there is no ambiguity in the testimony.

The commission finds that the petition insofar as it seeks amplification of the term nitrogen to include nitrate also should be denied, without prejudice to applicant to file an application for further hearing on clarification of this point within 20 days from the date hereof.

As to applicant's contention under item no. 3 that it should have been granted authority to transport salt not only from Hillsborough County to Polk County but from Hillsborough County to points and places in Florida, we have re-examined the testimony in this regard and find that it does not justify such grant of authority.

We have concluded, however, that further hearing should be held on this application but limited to public convenience and necessity for transportation of salt in bulk in truckload lots only from Hillsborough County to points and places in the state, and to the meaning of the term "nitrogen", if applicant signifies as aforesaid a desire for such clarification.

It is therefore ordered—

That the petition of protestant rail lines for a rehearing is denied.

That item (7) on sheet 8 of order #3717 and on certificate of public convenience and necessity #544 issued by said order is amended to read—*Nitrogen* from Escambia and Santa Rosa counties to Pasco County and from Hillsborough County to Polk County.

That an additional hearing be set in this docket on the application as it relates to authority sought for transportation of salt, but limited to public convenience and necessity for transportation of salt in bulk in truckload lots only from Hillsborough County to points and places in Florida, said hearing also to encompass the question of clarification of the word "nitrogen" as it relates to authority to transport nitrogen granted in the preceding paragraph, if applicant within 20 days from the date hereof files a petition for such clarification.

That the petition for rehearing of applicant Rockana Carriers, Inc. be and it is in all other respects denied and that order #3717 heretofore entered in this docket be and it is in all respect reaffirmed other than as above set forth.

———

Chairman ALAN S. BOYD, commissioners JERRY W. CARTER and WILBUR C. KING participated in the disposition of this matter.

BY THE COMMISSION.

*Order amending orders #3717 and #3923, August 9, 1957:* A further hearing, limited as stated in our prior order, was held before the commission in its hearing room in Tallahassee on July 19, 1957, pursuant to due notice. Lewis H. Hill, Jr., Tampa, appeared for the applicant. There were no protestants.

After further consideration of the testimony and evidence adduced in this cause, as amplified by the testimony and evidence presented at said hearing, the commission finds that applicant proved public convenience and necessity for motor common carriage of salt in bulk in truckload lots only from Hillsborough County to points and places in Florida and that its orders heretofore entered herein should be amended to grant such authority.

The commission further finds that the word "nitrogen" when used in trade practice with reference to fertilizer means and refers to the element in its various combinations. It includes and is generally used in reference to ammonium nitrate, nitrate of soda, nitrate of potash and sulphate of ammonia. Orders #3717 and #3923 should therefore be amended to strike from the authority

granted thereby the word "nitrogen" and insert in lieu thereof the words "ammonium nitrate, nitrate of soda, nitrate of potash and sulphate of ammonia."

It is therefore ordered—

That item (7) on sheets 8 and 10 of order #3717, as amended by order #3923, and certificate of public convenience and necessity #544 issued by said order #3717 are amended to read—*Ammonium nitrate, nitrate of soda, nitrate of potash and sulphate of ammonia* from Escambia and Santa Rosa counties to Pasco County and from Hillsborough County to Polk County.

That since item (6) on sheets 8 and 10 of order #3717 and on certificate #544 is duplicated by the foregoing amendment to item (7), item (6) is hereby stricken.

That item (10) on sheets 8 and 10 of order #3717 and on certificate #544 issued by order #3717 is amended to read—*Salt* in bulk in truckload lots only from Hillsborough County to points and places in Florida.